84 P.3d 545

**Kenneth Wayne PRATT, Plaintiff–Appellant,**

v.

**Evelyn Christian PRATT, Defendant–Appellee,**

and

**Child Support Enforcement Agency, Appellee.**

No. 25285.

Intermediate Court of Appeals of Hawai'i.

Jan. 20, 2004.

Charles H. Brower, on the briefs, Honolulu, for Plaintiff–Appellant.

Evelyn Christian Pratt, on the briefs, pro se, Defendant–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Kenneth Wayne Pratt (Kenneth) appeals from the following two orders entered in the Family Court of the First Circuit: (1) the May 15, 2002 Order Denying Motion for Post–Decree Relief Filed February 12, 2002; and (2) the July 25, 2002 Order Denying Motion for Further Hearing Filed May 30, 2002. Except where explicitly stated otherwise, the judge in this case was Judge Bode A. Uale. We affirm the result, but not the reason.

## BACKGROUND

Kenneth and Defendant–Appellee Evelyn Christian Pratt (Evelyn) were married on May 14, 1992. Evelyn gave birth to a daughter (Daughter) on December 26, 1992.

Pursuant to the agreement of Kenneth and Evelyn, the June 14, 1999 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree), entered by Judge Gale F. Ching, states that "[t]he parties have one child born during the marriage" and identifies Daughter as the "minor child of the parties"; awards physical custody of Daughter to Evelyn, subject to Kenneth's specified rights of reasonable visitation; and orders Kenneth to pay child support of $450 per month to Evelyn through the Child Support Enforcement Agency to maintain Daughter under the military medical/dental plan available to his dependent and to maintain a $50,000 life insurance policy for the benefit of Daughter.

On February 12, 2002, Kenneth filed a Motion for Post–Decree Relief for Amendment to Decree and Entry of a Supplemental Order. On March 22, 2002, Kenneth filed an Amended Motion for Post–Decree Relief for Amendment to Decree and Entry of a Supplemental Order (March 22, 2002 Motion). In an accompanying affidavit, Kenneth stated, in relevant part, as follows:

3. That there is [Daughter], with [my] last name, your Honor, at one time believed to be [my] child, . . . .

4. However, it has come to light, your Honor, that [I am] not the father of [Daughter].

5. That [I have] only just obtained test results that show that [I] cannot be the father of [Daughter], your Honor. . . .

6. That [I have] not established any relationship with [Daughter], your Honor, as the parties were separated when [Daughter] was only 3 1/2 years old.

. . . .

9. That I asked [Evelyn] numerous times about the real father of [Daughter], your Honor, but [Evelyn] refused to cooperate in clearing up the matter.

10. That I became suspicious, your Honor, when I got an anonymous phone call in the fall [of] 2001 from a man, who said "Thanks for taking care of my child for all these years." When I asked his name, he hung up on me.

11. That I believe it's [Evelyn's] old boyfriend in North Carolina, your Honor, and that [Evelyn] gave him my telephone number.

12. That I've been wronged, your Honor, and I need the Honorable Court to set things right.

13. That I respectfully request that the Honorable Court amend my divorce decree, so that it shows there is not a child between myself and [Evelyn], your Honor, and to cancel the child support obligation.

14. That I have no information as to the natural father, your Honor.

15. That in particular, your Honor, I do not want to go on paying child support for a child who is not mine, and with whom I have no relationship as a parent.

16. That I am asking the Honorable Court for an order regarding reimbursement from [Evelyn] of the $25,000.00 plus paid to [Evelyn]; [Evelyn] took money from me, knowing all along, that the child was not mine. I ask the Court for relief in this regard.

17. That possibly the Honorable Court can inquire as to the identity and location of the natural father, your Honor, as [Evelyn] will not reveal that information to [me].

18. That [Kenneth] apologizes to the Honorable Court for bringing up this matter, after the divorce, but I just did not

know, your Honor, and received no cooperation, and I am doing everything to correct the matter and request the Honorable Court's assistance.

On May 15, 2002, after a hearing, the court entered its Order Denying Motion for Post-Decree Relief Filed February 12, 2002, that states, in relevant part, as follows:

> The court specifically finds [Kenneth] to be the psychological father of the subject child; finds that [Kenneth] has had a number of contacts with the child since the age of three years. The court finds that [Kenneth's] statement that he has not had such contact with the child is not credible. [Kenneth], in fact had to have had recent contact in order to have had the DNA testing done.

On May 30, 2002, Kenneth filed a Motion for Further Hearing pursuant to Hawai'i Family Court Rules (HFCR) Rule 59.[1] In an accompanying affidavit, Kenneth stated, in relevant part, as follows:

> 3. That [Kenneth] is somewhat amazed that no testimony was taken from [Kenneth], the movant, your Honor, at least in rebuttal to [Marilyn's] testimony.

> 4. That [Kenneth] had previously obtained permission from the Honorable Court to appear via telephone, your Honor, and was, in fact, waiting by the phone, your Honor, on the day of the hearing.

> 5. That [Kenneth] thanks the Honorable Court for obtaining the name of the real 'natural' father of [Daughter], CLIFFORD WHITE, your Honor, as this name was not revealed before the Court's involvement, your Honor.

> 6. That [Kenneth] has some critical testimony relating to bonding, your Honor.

> 7. That [Kenneth] did not wish to give the Honorable Court the impression that he had not seen [Daughter] since (approximately) 1996, however contacts have been very, very limited, your Honor.

> 8. That the contact with [Daughter] for blood testing was very brief, your Honor.

> 9. That [Kenneth] (from Texas) set-up an appointment at a Blood Drawing Center in North Carolina for [Evelyn/Daughter] but at the last moment, [Evelyn] broke the appointment.

> 10. That [Kenneth] took leave from the Army, flew to North Carolina for a few days, and had the blood test done with just [Kenneth] and [Daughter]. [Kenneth] then flew back to Texas shortly afterwards, your Honor.

> 11. That for other years, [Kenneth's] contact was possibly 12 days out of 365 days; other years none at all, your Honor.

> 12. That [Kenneth] seeks guidance from the Honorable Court regarding the BONDING issue with the natural father, your Honor, as [Daughter] needs to know her 'real' father and his family, plus have the father as contact parent for medical emergencies such as blood transfusions and organ transplants.

> 13. That [Kenneth] has a proposed compromise to present to the honorable Court, that might satisfy all parties, your Honor.

> 14. That [Kenneth] thanks the Honorable Court for its interest and attention to this important matter, your Honor, and respectfully asks for an opportunity to address the Honorable Court, at a further hearing.

In *Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255 (2002), the child's mother filed a petition for paternity against the alleged father. The Hawai'i Supreme Court decided that the doctrine of issue preclusion barred the child's mother from bringing the paternity action because the divorce decree between the mother and her former husband had declared that the child was the son of the mother and her former husband, and the issue of paternity was essential to the portion of the final judgment of divorce that ordered the former husband to make support payments and provided for custody and visitation. The opinion of a majority of the court states, in relevant part, as follows:

---

1. The motion was filed in the clerk's office on May 30, 2002, but the family court "RECEIVED" the motion on May 29, 2002.

Issue preclusion, or collateral estoppel, bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication. Issue preclusion can be raised defensively by one who was not a party in the prior adjudication.

In this case, all of the foregoing requirements have been met with respect to Mother. The prior adjudication was the divorce proceeding between Mother and Presumed Father. The identical issue of who is Son's father was determined by the Divorce Decree when it declared that "[t]here are two children the issue of this marriage who are minors and who require support [,]" expressly naming Daughter and Son. The Divorce Decree constituted a final judgment. The issue of paternity was essential to the portion of the final judgment that ordered Presumed Father to make support payments and that provided for custody and visitation. Finally, the defense is being asserted against Mother, who was a party to the divorce proceeding. Similar circumstances were present in *Blackshear [v. Blackshear*, 52 Haw. 480, 478 P.2d 852 (1971)], the difference being that the defense was asserted against the former husband rather than the former wife. Accordingly, we hold that Mother is barred by the doctrine of issue preclusion, or collateral estoppel, from bringing an action against Alleged Father to establish paternity pursuant to HRS § 584–6 [ (1993) ]. In light of this determination, we need not address whether the doctrines of claim preclusion or equitable estoppel bar Mother's petition.

99 Hawai'i at 10–11, 52 P.3d at 264–65 (citations omitted).

On July 25, 2002, the court (1) heard Kenneth's Motion for Further Hearing and (2) filed an "Order Denying Motion for Further Hearing Filed May 30, 2002," stating, in relevant part, as follows:

(1) after the court heard movant's offer of proof through counsel, the court ruled that the motion is denied.

In addition,

(2) the court finds that to disestablish movant as the father would be harmful to [Daughter].

On August 26, 2002, Kenneth filed a notice of appeal.

On September 26, 2002, the court entered Findings of Fact and Conclusions of Law, in relevant part, as follows:

6. Almost ten years after the parties were married and almost three years after the parties divorced, [Kenneth] filed a motion seeking to dis-establish himself as father of [Daughter] named in the parties['] divorce decree;

. . . .

9. At a hearing on the matter on May 15, 2002, [Kenneth] argued that he and [Evelyn] were separated when [Daughter] was three and a half years (3½) old and that he had lived apart from [Daughter] and [Evelyn] for over six (6) years and that he had not developed any relationship with [Daughter];

10. [Evelyn's] testimony via telephone was contrary and that [Kenneth] had known that there was a possibility that he was not the biological father of [Daughter] and that he wanted to marry [Evelyn] anyway and had agreed to raise [Daughter] as his own;

11. [Evelyn] further testified that [Kenneth] had regular contact with [Daughter] and as recent as last year, he had sent an airplane ticket to [Daughter] for [Daughter] to go and visit him;

12. Further, while [Kenneth] had [Daughter] with him he conducted a DNA test on [Daughter] which he seeks to use now as means to dis-establish himself as [Daughter's] father;

13. Based on all the evidence, the Court made a finding that [Kenneth] is the psychological father of the child and that he has had numerous contacts with the child and that it was not in the best interest of the child as [Kenneth] had held himself out to be [Daughter's] father;

14. The Court found [Evelyn's] testimony more credible than [Kenneth's] testimony. The Court further found that [Kenneth] had numerous visits with [Daughter] and that [Kenneth] was the psychological father of [Daughter]. [Kenneth's] motion was denied.

. . . .

### Conclusions of Law

17. [Kenneth's] testimony that he had little contact with [Daughter], did not have a relationship with [Daughter] and did not know that [Daughter] was not his biological child is not credible.

18. [Kenneth] is the psychological father of [Daughter] born in 1992 during the marriage. Notwithstanding [Daughter] not being [Kenneth's] biological child, it would not be in [Daughter's] best interests to now, some ten years later to dis-establish [Kenneth] as father of [Daughter]. The Court finds that it would be psychologically harmful to [Daughter] and that [Kenneth] knew that he was possibly not the biological father of [Daughter].

### POINTS ON APPEAL

Kenneth challenges the court's July 25, 2002 finding "that to disestablish [Kenneth] as the father would be harmful to [Daughter]", findings of fact Nos. 10 and 13, and conclusion of law No. 18.

### DISCUSSION

Conclusion of law No. 18 is a mislabeled finding of fact.

HFCR Rule 60(b) (2003) states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

In light of the time limitations specified in HFCR Rule 60(b), by March 22, 2002, the only authority available to the family court in this case was HFCR Rule 60(b)(6). In essence, Kenneth's March 22, 2002 Motion asked the family court, pursuant to its authority under HFCR Rule 60(b)(6), to relieve Kenneth from those parts of the Divorce Decree pertaining to his paternity of, and legal rights and obligations regarding, Daughter "so that it shows there is not a child between [Kenneth] and [Evelyn] ... and to cancel the child support obligation."

HFCR Rule 8(c) (2003) states, in relevant part, as follows:

In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires,

shall treat the pleading as if there had been a proper designation.

■ In this case, notwithstanding the precedent of *Blackshear v. Blackshear*, 52 Haw. 480, 478 P.2d 852 (1971), and *Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255, there is no indication in the record that, at the hearing on July 25, 2002, Evelyn asserted a collateral estoppel affirmative defense. Therefore, the court was required to decide Kenneth's HFCR Rule 60(b)(6) motion on the merits.

The court denied Kenneth's HFCR Rule 60(b)(6) motion based on its finding that Kenneth is "the psychological father of the [Daughter]." In other words, the court implicitly decided that although Kenneth is not the biological father of Daughter, the fact that Kenneth is the psychological father of Daughter is reason for the court, in the exercise of its discretion, not to relieve Kenneth from those parts of the Divorce Decree pertaining to his legal (and not necessarily biological) paternity of, and legal rights and obligations regarding, Daughter.

■ The standard of appellate review of the family court's denial of a motion under HFCR Rule 60(b)(6) is the abuse of discretion standard. *DeMello v. DeMello*, 3 Haw. App. 165, 646 P.2d 409 (1982). We pass on the question whether there is any merit to the court's decision that the fact that Kenneth is the psychological father of Daughter

is reason for the court, in the exercise of its discretion, not to relieve Kenneth from those parts of the Divorce Decree pertaining to his legal (not necessarily biological) paternity of, and legal rights and obligations regarding, Daughter. In light of the policies clearly implicit in the Hawaii Supreme Court's Opinion in *Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255, notwithstanding the current ability of science to determine paternity and non-paternity, the facts that Evelyn opposed Kenneth's HFCR Rule 60(b)(6) motion and could have successfully asserted a collateral estoppel affirmative defense, motivate our decision that Kenneth failed his burden on appeal of showing that the family court abused its discretion when it denied his HFCR Rule 60(b)(6) motion.

## CONCLUSION

Accordingly, we affirm the family court's (1) May 15, 2002 Order Denying Motion for Post–Decree Relief Filed February 12, 2002; and (2) July 25, 2002 Order Denying Motion for Further Hearing Filed May 30, 2002.