129 P.3d 511

**The ESTATE OF Edith I. KAM, aka Edith Ing Kam, Deceased.**

**No. 25398.**

Supreme Court of Hawai'i.

Feb. 27, 2006.

---

Edward R. Bendet and Denis Lee, (of Bendet, Fidell, Sakai & Lee), Honolulu, on the writ and supplemental briefs, for petitioner-cross-respondent/petitioner-appellee Cedric C.I. Kam.

Roger Y. Dewa, Honlulu, on the writ and supplemental briefs, for respondent-cross-petitioner/petitioner-appellant Paz F. Abastillas and for respondent/petitioner-appellant Robert A. Smith.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

The instant appeal arises out of family court and probate court proceedings relating to Edith Ing Kam (Kam) and her estate.

On September 13 and 16, 2002, the Circuit Court of the First Circuit [hereinafter, Probate Court], the Honorable Colleen K. Hirai presiding, entered judgments (1) denying the petition of respondent-cross petitioner/petitioner-appellant Paz F. Abastillas to (a) vacate the Probate Court's July 17, 2000 probate order naming petitioner-cross respondent/petitioner-appellee Cedric C.I. Kam (Cedric) as personal representative of the Kam estate pursuant to Kam's 1988 will and (b) appoint Abastillas as personal representative under Kam's 1996 will; (2) granting Cedric's petition for instructions; and (3) denying the petition of Abastillas and respondent/petitioner-appellant Robert A. Smith for allowance of creditors' claims against Kam's estate for legal and personal services rendered. On August 8, 2005, the Intermediate Court of Appeals (ICA) issued a memorandum opinion [hereinafter, ICA's opinion] vacating all of the Probate Court's judgments and remanding for further proceedings. Subsequently, both Cedric and Abastillas filed applications for a writ of certiorari to review the ICA's opinion.

We granted both applications in order to address two questions. First, we granted Cedric's application in order to review whether the Probate Court erred in relying on two April 22, 1997 orders entered by the family court of the first circuit [hereinafter, Family Court] appointing permanent co-guardians of Kam's property and voiding certain estate documents, including Kam's 1996 will. Specifically, we are faced with a collateral attack on the April 22, 1997 orders, the question presented being whether the Family Court had subject matter jurisdiction to enter its orders or whether they were void *ab initio* for lack of subject matter jurisdiction and thus not entitled to any effect in the Probate Court. Second, we granted Abastillas' application in order to consider the ICA's conclusion that the Family Court's 1996 findings that, *inter alia*, Kam lacked capacity to make reasoned decisions concerning her person and property, have preclusive effect. Because we agree with the ICA that the Family

Court did not have subject matter jurisdiction to enter its April 22, 1997 orders and thus hold that the Probate Court erred in finding them "valid and enforceable," we now affirm the ICA's opinion in part, reverse in part, and remand the case to the Probate Court for further proceedings.

## I. BACKGROUND

### A. *Proceedings in the Family Court*

#### 1. Adult Protective Proceedings (FC-AA-96-0003)

On June 14, 1996, the Department of Human Services, State of Hawai'i (DHS), initiated an adult protective proceeding in the Family Court (docketed as FC-AA-96-0003) under Hawai'i Revised Statutes (HRS) § 346-223 (1993),[1] seeking protection for Kam, then aged 93. DHS sought protection based on allegations that Kam was being exploited by her then-attorney, Smith, and his paralegal, Abastillas. Upon DHS's *ex parte* motion, the Family Court entered an Order for Immediate Protection that same day.

On August 27, 1996, the Family Court followed with an order in FC-AA-96-0003 appointing a guardian of Kam's property. Smith and Abastillas appeared as parties to the proceedings. On September 9, 1996, the Family Court entered another order in FC-AA-96-0003 discharging the first guardian of Kam's property and appointing two of her relatives as temporary co-guardians of her property. Smith and Abastillas again appeared and approved the order. Also that day, the parties reached an agreement to resolve the situation without trial, which was summarized as follows in the findings of fact entered by the Family Court on October 3, 1996 in FC-AA-96-0003:

A. Paz Abastillas and Robert A. Smith are parties to this action;

B. The Court appointed Patricia Blanchette, M.D., as an Independent Medi-

---

1. HRS § 346-223, part of chapter 346, part X, entitled "Dependent Adult Protective Services," provides in relevant part that "[t]he family court shall have jurisdiction in protective proceedings under this part concerning any dependent adult ... [who] has been abused and is threatened with imminent abuse[.]"

cal Examiner, to examine Edith Ing Kam and report back to the court;

C. Dr. Blanchette examined Edith Ing Kam on July 18, 1996 and rendered a report to the Court dated August 8, 1996;

D. Edith Ing Kam does not consent to these proceedings;

E. Edith Ing Kam is an incapacitated adult as evidenced by Dr. Patricia Blanchette's report in that:

1. she suffers from Alzheimer's Disease and suffers from dementia of the Alzheimer's Type;

. . . .

3. she does not have the capacity to make reasoned decisions concerning her money and properties; and

4. she lacks the capacity to make and communicate decisions concerning her person;

F. Edith Ing Kam is a "dependent adult" as defined in HRS Section 346–222;

G. Pursuant to Section 346–228(1), Hawai'i Revised Statutes, [DHS] may resolve any case "in an informal fashion as is appropriate . . . [.]" In this case, [DHS] has appropriately chosen to resolve this case in such an informal fashion. Therefore, findings as to abuse or threatened abuse are not required;

H. The relief ordered in this case is in Mrs. Edith Kam's best interest;

I. At the Pretrial Conference held on September 9, 1996, the Court was informed that the parties had reached an agreement to settle this case by the entry [of] the Order Appointing Temporary Co–Guardians of the Property and Continuing Existing Orders, filed on September 9, 1996, on the understanding that, while parties [Kam, Smith, and Abastillas] would not sign

approval as to form or substance, neither would they oppose the entry of the order or protest it once entered.

The October 3, 1996 findings of fact appear to have been entered over the objection of Smith and Abastillas,[2] who argued that because the case was being settled by tacit consent rather than adjudicated, there were no grounds for entry of factual findings which might then have prejudicial preclusive effect in other pending or future litigation.

**2. Guardianship Proceedings (FC–G–96–0299)**

On September 4, 1996, the Office of the Public Guardian filed a petition (docketed as FC–G–96–0299) for appointment of co-guardians of Kam, as an incapacitated person, pursuant to HRS chapter 560 [hereinafter, Hawai'i Uniform Probate Code or HUPC], section 560:5–102 (1993).[3] On October 8, 1996, the Family Court granted the petition and entered an order appointing the same co-guardians of Kam's property in FC–AA–96–0003 as co-guardians of Kam's person in FC–G–96–0299.

This court takes judicial notice that shortly thereafter, on October 29, 1996, the chief justice of this court entered two standing orders bearing on the analysis of this case. One order, titled "Assignment of District and District Family Court Judges," [hereinafter, October 29, 1996 Standing Order re: District Judges] provides in relevant part as follows:

Pursuant to article VI, §§ 2 and 6 [4] of the Constitution of the State of Hawai'i, [the chief justice does] hereby *assign the several district judges, including the several district family judges . . . to temporarily preside in the circuit courts of their respective circuits*, on an as needed basis, to hear such circuit court matters as shall be assigned by the appropriate Administrative Judge of the Circuit Court of that circuit, who shall coordinate such assign-

---

2. The copy of the objections included in the record on appeal in this case do not bear a file stamp of the clerk of the Family Court.

3. *See infra* Section I.C.

4. Article VI, section 2 provides in relevant part that "[t]he chief justice may assign . . . a judge of

the district court to serve temporarily on the circuit court." Haw. Const. art. VI, § 2. Article VI, section 6 provides in relevant part that "[t]he chief justice may assign judges from one circuit court to another for temporary service." Haw. Const. art. VI, § 6.

ments with the Administrative Judge of the District Court or the Senior Family Judge of that circuit, as applicable; provided that all temporarily assigned district and district family judges shall also hear such matters as may be assigned to them by their respective administrative judge. This order shall be effective upon filing and shall remain in effect until otherwise ordered.

(Emphasis in original.) The other order, titled "Order Designating Circuit Judges of the First Judicial Circuit of the State of Hawai'i to Act as Circuit Family Judges," [hereinafter, October 29, 1996 Standing Order re: First Circuit Judges] provides in relevant part as follows:

Pursuant to [HRS] § 571-4, [the chief justice does] hereby *designate the several circuit judges and any acting circuit judge* of the Circuit Court of the First Judicial Circuit *to act as circuit family judges,* on an as needed basis, to hear such family court matters as shall be assigned to them by the Senior Family Judge of the First Circuit, who shall coordinate such assignments with the appropriate Administrative Judge of the First Circuit Court; provided that all acting circuit family judges shall also hear such circuit court matters as may be assigned to them by their respective administrative judge. This designation shall be effective upon the filing of this order and shall remain in effect until otherwise ordered.

(Emphases in original.)

■ On December 6, 1996, the co-guardians of Kam's person filed a motion in the Family Court for leave to file a petition for appointment of guardians of Kam's property pursuant to the HUPC and HRS chapter 346.[5] In an affidavit in support of the motion, counsel for the movants declared that

"consolidation of the guardianship of the property proceedings with the [guardianship of the person proceedings] would be in the best interests" of all parties concerned. Counsel for the movants added:

Although the Probate Court normally has jurisdiction over proceedings for the appointment of a guardian of the property under [HRS] § 560:5-102, both that section and [HRS] § 346-235 provide that where a proceeding for appointment of the guardianship of the person is pending, a proceeding for appointment of a guardian of the property may be consolidated with that proceeding in the Family Court, as the applicable Circuit Court and Family Court, in the exercise of their discretion, shall determine.

On January 2, 1997, the Family Court entered an order granting the motion.[6]

On February 10, 1997, the co-guardians of Kam's person filed a petition in the Family Court to be appointed co-guardians of Kam's property in FC-G-96-0299. On February 25, 1997, the co-guardians of Kam's person filed a motion in the Family Court in FC-G-96-0299 to void a will and certain other estate documents executed by Kam in 1995-96 in favor of Abastillas and Abastillas' daughters. The February 25, 1997 motion alleged that Kam had executed the documents while lacking testamentary capacity and under the undue influence of Smith and Abastillas. Smith and Abastillas were not parties in FC-G-96-0299, did not appear in the action, and no opposition was made to the petition or motion. On April 22, 1997, the Family Court found that it had jurisdiction under the HUPC and entered an order in FC-G-96-0299 granting the February 10, 1997 petition and making the co-guardians the permanent co-guardians of Kam's property. That same day, the Family Court entered a second order pursuant to the HUPC in FC-G-96-0299

---

5. Although certain of the procedural facts of the Family Court proceedings do not appear in the record on appeal in the instant case, this court may take judicial notice of the records and files in FC-G-96-0299. *See Ranger Ins. Co. v. Hinshaw,* 103 Hawai'i 26, 29 n. 7, 79 P.3d 119, 122 n. 7 (2003) (noting that, where record on appeal does not provide sufficient information, court may take judicial notice of record in related case).

6. This court takes judicial notice of the fact that The Honorable John J. Bryant, Jr., who entered the January 2, 1997 order, was at that time a judge of the district family court of the first circuit appointed pursuant to HRS § 571-8 (1993).

wherein it granted the February 25, 1997 motion and declared the 1995–96 will and estate documents null and void. No appeals were taken from any of the Family Court orders.[7]

## B. *Proceedings in the Probate Court*

On January 8, 2000, Kam died. Cedric initiated the instant case on May 5, 2000 by filing a petition (docketed as P. No. 00–1–0281) pursuant to HRS § 560:3–401 (1993),[8] for probate of the 1988 will and trust in favor of Kam's children, Cedric and Edward W.L. Kam, Jr. On July 17, 2000, the Probate Court entered an order and judgment admitting the 1988 will to probate, appointing Cedric personal representative of Kam's estate, and issuing letters testamentary to him.

On September 11, 2000, Smith and Abastillas filed a petition as creditors of Kam's estate for unpaid legal and personal services rendered to Kam in 1995 and 1996. On October 11, 2000, Cedric objected to the creditors' petition, alleging that the services rendered were part of a scheme to unduly influence and exploit Kam, and were of no benefit to her. That same day, Cedric also filed a petition for instructions seeking direction as to how to proceed with administration of the estate given the conflicting claims made by Smith and Abastillas. On October 19, 2000, at 4:21 p.m., Abastillas and Smith filed a reply to Cedric's objection, attaching approximately 300 pages of documents supporting their creditors' claim. At a 9:00 a.m. October 20, 2000 hearing on the creditors' petition, Abastillas also voiced claims that she was the rightful personal representative of Kam's estate under the 1996 will. With respect to the petition itself, the Probate Court found as follows:

> The court first finds that [Abastillas and Smith's] reply filed on October 19th at 4:21 in the afternoon is untimely.
>
> The court further examining this document notes that there are 28 exhibits attached as part of this reply memo. These exhibits

certainly should have been attached as part of the original petition, and if they were known in the exercise of reasonable due diligence would have been or should have been discovered by creditors so as to file this at the time the original petition was filed. The court finding that this document is untimely filed disregards and does not consider it in connection with the petition filed on behalf of Abastillas and Smith.

> Having reviewed the timely filed and properly submitted matters presented to the court, the court finds simply that the petitioners in this case, Abastillas and Smith, have failed to establish factual and/or legal basis which would warrant their entitlement for payment of claims as requested or alleged. The petition is denied.

On November 8, 2000, the Probate Court entered a written order denying the creditors' petition of Smith and Abastillas.

On November 2, 2000, Abastillas followed through on her statements at the October 20 hearing, filing a petition to vacate the July 17, 2000 probate order and to instead have admitted to probate the 1996 will with her as personal representative of the estate. On November 13, 2000, Abastillas filed her objections to Cedric's October 11, 2000 petition for instructions. In her objection, Abastillas argued, *inter alia*, that the April 22, 1997 Family Court order in FC–G–96–0299 purporting to void the 1995–96 estate documents was void for lack of subject matter jurisdiction and thus should not be given effect by the Probate Court. She also contended that the rulings in FC–AA–96–0003, including the October 3, 1996 findings of fact, had no preclusive effect because they were not actually litigated.

On December 1, 2000, Cedric's petition for instructions came for hearing before the Probate Court. After hearing arguments from counsel regarding jurisdiction, the Probate

---

7. This court takes judicial notice of the fact that The Honorable Darrell Y.C. Choy, who entered the April 22, 1997 orders, was at that time a judge of the district family court of the first circuit appointed pursuant to HRS § 571–8.

8. HRS § 560:3–401, entitled "Formal testacy proceedings; nature; how commenced," outlines the procedure for probate of a will.

Court took the matter under advisement.[9] On December 13, 2000, Cedric filed his objection to Abastillas' petition to vacate the July 17, 2000 probate order. Abastillas filed her reply on December 21, 2000.

On January 12, 2001, Abastillas' petition to vacate was heard in the Probate Court. At the close of the hearing, the Probate Court denied Abastillas' petition, finding that the April 22, 1997 Family Court order validly voided the 1996 will and thus the July 17, 2000 order admitting to probate the 1988 will remained in effect. At a hearing on May 11, 2001, the Probate Court agreed to certify the various probate orders for interlocutory appeal.

On January 2, 2002, the Probate Court entered orders (1) granting Cedric's October 11, 2000 petition for instructions, (2) denying Abastillas' November 2, 2000 petition to vacate, and (3) certifying the orders for interlocutory appeal. On September 13, 2002 and September 16, 2002, the Probate Court entered judgments (1) denying the September 11, 2000 creditors' petition of Smith and Abastillas; (2) granting Cedric's October 11, 2000 petition for instructions; and (3) denying Abastillas' November 2, 2000 petition to vacate the July 17, 2000 order for probate of the 1988 will and instead appoint her as representative under the 1996 will. The judgments were certified for interlocutory appeal, and Abastillas and Smith filed notices of appeal from all three on October 11, 2002.[10] In granting Cedric's petition and denying that of Abastillas, the Probate Court ruled that the April 22, 1997 order voiding the 1996 will and July 17, 2000 order directing probate of the 1988 will were "valid and enforceable and remain in effect."

### C. Proceedings Before the ICA and Supreme Court

On appeal, Abastillas again argued, *inter alia,* that (1) the Family Court orders of April 22, 1997 were void for lack of subject matter jurisdiction, and (2) the Family Court's rulings in FC–AA–96–0003 had no preclusive effect because they were not actually litigated. Abastillas and Smith also argued that: (1) the Probate Court's denial of their creditors' petition for the untimeliness of their reply brief was improper under HRS § 560:3–804 (1993)[11] and Hawai'i Probate Rules (HPR) Rule 63;[12] and (2) the Probate Court erred in not assigning the creditors' petition, as a contested matter pursuant to HPR Rules 19 and 20,[13] to the civil trial calendar or retaining it for a deferred hearing. On August 8, 2005 the ICA issued a seventy-three page memorandum opinion vacating all three of the Probate Court's judgments and remanding to the Probate Court for further proceedings. ICA's Opinion at 72–73.

In its opinion, the ICA concluded that: (1) the Family Court's April 22, 1997 orders were null and void for lack of subject matter jurisdiction with the result that the 1996 will was never voided and the Probate Court erred both in denying Abastillas' petition to vacate and in granting Cedric's petition for instructions; and (2) the Family Court's rulings in FC–AA–96–0003 had preclusive effect. As to subject matter jurisdiction, the ICA concluded:

> Regarding the family court's jurisdiction to enter, in FC–G No. 96–0299 (Guardianship Proceedings), the April 22, 1997 "Or-

---

9. It appears the petition was granted by minute order on December 28, 2000, but the minute order is not part of the record on appeal.

10. On October 16, 2002, Smith voluntarily dismissed as inadvertently filed his appeals from the orders granting petition for instructions and denying petition to vacate because he was not a party to either of those petitions. Accordingly, he is a party only to the appeal of the denial of the creditors' petition.

11. HRS § 560:3–804 provides for the manner of presentation of creditors' claims.

12. HPR Rule 63 provides:

A creditor seeking payment from the deceased shall present a claim by (a) delivering the claim, with an affidavit in support thereof, to the personal representative, or (b) filing the claim and affidavit with the court and timely serving a copy of the claim to the personal representative.

13. HPR Rule 20(a) provides:

The court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court.

der Granting Motion to Void Estate Planning Documents, Filed February 25, 1997," Abastillas argues that the family court is of "limited jurisdiction," does not have the power to probate or void a will, and, therefore, Abastillas was "free to, and did, ignore the motion before [the Family Court] because [the Family Court's] order was a 'complete nullity'; its defectiveness is not subject to waiver; and it may be attacked, directly or collaterally, at any time in any court." This argument has merit.

On October 8, 1996, based on the provisions of Hawaii's Uniform Probate Code, HRS §§ 560:5–101 and –102, the family court appointed ... co-guardians of Mrs. Kam's person.

On February 10, 1997, allegedly based on the provisions of Hawaii's Uniform Probate Code, [the co-guardians] filed a "Petition for Appointment of Co–Guardians of the Property." On April 22, 1997, [the Family Court] entered ... an "Order Granting Petition for Appointment of Co–Guardians of the Property, Filed February 10, 1997." This order stated that the family court had "jurisdiction pursuant to H.R.S. § 560:5–102" and appointed ... "Co–Guardians of the Property of [Mrs.] Kam ... without bond[.]" [The Family Court also entered] an "Order Granting Motion to Void Estate Planning Documents, Filed February 25, 1997."

In the Guardianship Proceedings, we conclude that: (1) the family court had jurisdiction over the "guardian of the person"; (2) no later than January 1, 1997, the family court did not have jurisdiction over the "guardian of the property"; and (3) HRS Chapter 560, Hawaii's Uniform Probate Code, did not authorize the family court to enter its two April 22, 1997 orders, and, therefore, those orders are void *ab initio*.

HRS §§ 560:5–101 and –102 [ (1993) ] state as follows:

**560:5–101 Definitions and use of terms.** Unless otherwise apparent from the context, in this chapter:

(1) "Guardianship proceeding" is a proceeding to appoint a guardian of the person for an incapacitated person or a minor;

. . . .

(3) A "protective proceeding" is a proceeding under the provisions of section 560:5–401 to determine that a person cannot effectively manage or apply the person's estate to necessary ends, either because the person lacks the ability or is otherwise inconvenienced, or because the person is a minor, and to secure administration of the person's estate by a guardian of the property or other appropriate relief;

(4) A "protected person" is a minor or other person for whom a guardian of the property has been appointed or other protective order has been made;

(5) A "ward" is a person for whom a guardian of the person has been appointed. A "minor ward" is a minor for whom a guardian of the person has been appointed solely because of minority.

**560:5–102 Jurisdiction of subject matter; consolidation of proceedings.** The court has jurisdiction over protective proceedings and the family court has jurisdiction over guardianship proceedings. Where protective and guardianship proceedings relating to the same person have been initiated, they may be consolidated in the court or in the family court as the court and the family court in the exercise of their discretion shall determine.

Prior to January 1, 1997, in HRS § 560:1–201(5) [ (1993) ], Hawaii's Uniform Probate Code stated that " 'Court' means the circuit court having jurisdiction in matters relating to trusts and the estates of decedents, missing persons, protected persons, minors and incapacitated persons." This definition of "Court" includes both the probate court and the family court.[14] It allowed the following interpretation of

---

14. The ICA opinion here contained a footnote with the text of HRS § 571–11 (1993). The text of that statute is set forth and considered herein in Section III.A, *infra*, at note 22 and surrounding text.

HRS § 560:5–102: "The [probate court and the family court have] jurisdiction over protective proceedings and the family court has jurisdiction over guardianship proceedings."

Commencing January 1, 1997, Hawaii's Uniform Probate Code states, in HRS § 560:1–201, that " 'Court' means the circuit court in this State having jurisdiction in matters relating to the affairs of decedents" and, in HRS § 560:1–302(c), that "[t]he court has jurisdiction over protective proceedings [HRS § 560:5–401] and the family court has jurisdiction over guardianship proceedings." These changes require the following interpretation of HRS § 560:5–102: "The [probate] court has jurisdiction over protective proceedings [including all proceedings involving a guardian of the property] and the family court has jurisdiction over guardianship [of the person] proceedings."

. . . .

[Thus], no later than January 1, 1997, the family court did not have jurisdiction over the "guardian of the property," and HRS Chapter 560, Hawaii's Uniform Probate Code, as amended effective January 1, 1997, did not authorize the family court to enter the two April 22, 1997 orders in the Guardianship Proceedings.

ICA's Opinion at 57–63 (some brackets in original and some brackets added). Because the Family Court lacked subject matter jurisdiction to enter the April 1997 orders, the ICA concluded that the Probate Court's

grant of the petition for instructions and denial of the petition to vacate were wrong.[15] ICA's Opinion at 62.

As to Abastillas' argument that the Family Court's rulings in FC–AA–96–0003 had no preclusive effect because the issues were never actually adjudicated but instead were settled, the ICA disagreed, concluding:

Regarding adjudication, on September 9, 1996, [the Family Court] entered an "Order Appointing Temporary Co–Guardians of the Property and Continuing Existing Orders" stating that the "[t]rial set for September 23 and 24, 1996 is taken off the calendar," and ordering that the "[p]arties shall submit proposed findings within seven days[.]" Smith, as "Party Pro Se" and "Counsel for Paz Abastillas" "refused" to approve this order. However, on October 3, 1996, the court entered a finding that "[a]t the Pretrial Conference held September 9, 1996, the Court was informed that the parties had reached an agreement to settle this case by the entry [of] the Order Appointing Temporary Co–Guardians of the Property and Continuing Existing Orders . . . on the understanding that, while parties [Mrs.] Kam, . . . Smith, and . . . Abastillas would not sign approval as to form or substance, neither would they oppose the entry of the order or protest it once entered." Therefore, Abastillas did not disagree with the settlement. In effect, her non-disagreement is the stipulation referred to in HRS § 346–240(c) [ (1993) ],[16] and the acceptance referred to

15. The ICA also found error, separate and independent from the jurisdictional issue, in the Probate Court's judgments granting Cedric's petition for instructions and denying Abastillas' petition to vacate. In so concluding, the ICA reasoned:

[The Family Court's] October 3, 1996 finding that Mrs. Kam did "not have the capacity to make reasoned decisions concerning her money and properties" is expressly based on Dr. Blanchette's examination of Mrs. Kam on July 18, 1996. Based on [this] valid finding, [the Family Court] decided that various "estate planning documents executed by [Mrs.] Kam be and are hereby declared null and void[.]" The first of those documents is dated July 7, 1995, and the last is dated May 24, 1996. All of these documents were executed prior to Dr. Blanchette's examination of Mrs. Kam on July 18, 1996. Admittedly, the record indicates that Mrs. Kam showed signs of Alzheimer's no

later than April of 1996. Dr. Vit Patel, who made this diagnosis based upon an April 19, 1996 interview, stated that "[c]oncerns this examiner would have is essentially need for immediate protection of patient's property and financial resources to which is most vulnerable for exploitation because of her significant and clear dementia." [The Family Court] did not, however, find that Mrs. Kam did "not have the capacity to make reasoned decisions concerning her money and properties" when she executed the documents declared null and void by [the Family Court's] April 22, 1997 order.

ICA's Opinion at 62 (some brackets in original and some added).

16. HRS § 346–240(c) provides in relevant part:

If facts sufficient to sustain the petition are established in court, or are stipulated to by all

in HRS § 346–241(e) [ (1993) ].[17]

Consequently, in light of the following rule of law and subject to one exception to be discussed in the next part,[18] we conclude that Abastillas is bound by [the Family Court's] decisions.

> In *Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255 (2002), the child's mother filed a petition for paternity against the alleged father. The Hawai'i Supreme Court decided that the doctrine of issue preclusion barred the child's mother from bringing the paternity action because the divorce decree between the mother and her former husband had declared that the child was the son of the mother and her former husband, and the issue of paternity was essential to the portion of the final judgment of divorce that ordered the former husband to make support payments and provided for custody and visitation. The opinion of a majority of the court states, in relevant part, as follows:
>
> > Issue preclusion, or collateral estoppel, bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication. Issue preclusion can be raised defensively by one who was not a party in the prior adjudication.
>
> *Pratt v. Pratt*, 104 Hawai'i 37, 40, 84 P.3d 545, 547 (Hawai'i App.2004).

ICA's Opinion at 56–57.

With respect to the denial of the Smith and Abastillas' creditors' petition, the ICA found:

At [the time the petition and papers in connection therewith were filed], HPR Rule 10(c) stated, in relevant part, as follows: [19]

> (c) Time to File Pleadings or Reports. A party objecting or responding to a petition must file the objection or response with the court and serve[ ] it on interested persons within 30 days of service of the petition and notice of hearing[ ]. . . . Unless otherwise ordered by the court, pleadings in response to a response or objection[ ] . . . shall be filed with the court and served on counsel for parties who have appeared in the proceeding no less than 72 hours prior to the time set for the hearing as originally set[.]
>
> . . . .

In light of the record prior to the September 11, 2000 petition, especially given the actions by the family court and the probate court, we conclude that (1) [Smith and Abastillas] knew or should have known the various burdens they would face when they asserted their claims for costs, fees, and state excise taxes, and should have confronted and satisfied those burdens in their September 11, 2000 petition; (2) when the October 20, 2000 hearing was scheduled, [Smith and Abastillas] knew or should have known that if Cedric used all of the 30 days permitted for him to file his objection, [Smith and Abastillas] would not have much time to timely file a reply to Cedric's objection which was no less than 72 hours before the hearing; (3) the court did not consider [Smith and Abastillas'] reply because it was not timely filed; (4) the court's decision that much of what the reply said should have been said in the original petition was only one of the reasons why the court did not excuse the

---

parties, the court shall enter an order finding that the dependent adult has been abused and threatened with imminent abuse and shall state the grounds for the finding.

17. HRS § 346–241(e) provides:
   The court shall conduct a disposition hearing concerning the terms and conditions set forth in the proposed protective order and proposed protective services plan unless each of the appropriate parties accepts the order and plan, in

which event, the court may approve the order and plan without a hearing.

18. The exception referred to the lack of subject matter jurisdiction voiding the April 22, 1997 orders. *See* ICA's Opinion at 57–61.

19. HPR Rule 10(c) was substantively amended effective July 1, 2003. As amended, it is silent with respect to "pleadings in response to a response or objection." [Footnote in original.]

untimely filing; (5) the applicable standard of review is the abuse of discretion standard; (6) an abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant[,]" *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted); and (7) the court did not abuse its discretion. ICA's Opinion at 66–68. The ICA also rejected Abastillas' argument that the Probate Court should have deferred hearing on the creditors' petition or reassigned it for civil trial as a contested matter under HPR Rules 19 and 20. Instead, the ICA concluded that it was within the Probate Court's discretion whether to retain the matter or assign it to the civil trials calendar, and that the Probate Court did not abuse its discretion in retaining and dismissing it. ICA's Opinion at 68–72. Despite the foregoing, however, the ICA vacated the Probate Court's denial of creditors' petition "in light of [its] decision vacating the final judgments pertaining to the probate of the will and the petition for instructions[.]" ICA's Opinion at 72.

After the ICA denied Abastillas' motion for reconsideration on August 25, 2005, Cedric filed an application for a writ of certiorari on September 6, 2005, which was granted by this court on September 14, 2005 over the opposition of Abastillas. Cedric's application assigned two points of error with respect to the ICA's jurisdictional conclusion: 1) the ICA's reliance on the amended version of the HUPC was in error because that version was not in effect when the Family Court entered its orders on April 22, 1997; and 2) in the alternative, the Family Court had jurisdiction under HRS chapter 346.

On September 23, 2005, Abastillas filed a cross-application for a writ of certiorari, which was granted by this court on September 29, 2005. Abastillas assigned one point of error—namely, the ICA gravely erred in giving the October 3, 1996 Family Court findings preclusive effect because the issues were not "actually litigated" or "finally decided." With leave of this court, Cedric and Abastillas filed supplemental briefs on the issue of whether the Family Court had subject matter jurisdiction to enter its April 22, 1997 orders.

## II. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

■ "Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo.*" *In re Doe Children,* 96 Hawaiʻi 272, 283, 30 P.3d 878, 889 (2001).

### B. Conclusions of Law

■ "A trial court's conclusions of law are reviewed *de novo,* under the right/wrong standard of review." *Child Support Enforcement Agency v. Roe,* 96 Hawaiʻi 1, 11, 25 P.3d 60, 70 (2001) (quoting *State v. Ah Loo,* 94 Hawaiʻi 207, 209, 10 P.3d 728, 730 (2000)) (internal quotation marks and brackets omitted).

## III. DISCUSSION

### A. The Family Court Did Not Have Subject Matter Jurisdiction to Enter Its April 22, 1997 Orders.

■ The Probate Court granted Cedric's petitions for instructions to proceed with probate of Kam's 1988 will and denied Abastillas' petition to vacate the prior order for probate of the 1988 will because it concluded that Kam's subsequently executed estate documents had been voided by the "valid and enforceable" April 22, 1997 order of the Family Court. The ICA, in turn, concluded that the Family Court's order was not valid or enforceable because that court lacked subject matter jurisdiction to enter it. In his application, Cedric argues that the ICA gravely erred in so concluding because it failed to consider the effective date of the 1996 amendments to the HUPC. Specifically, he argues that the amendments stripping the Family Court of jurisdiction in guardianship of the property proceedings did not take effect with respect to the instant case until July 1, 1997, such that the Family Court still had jurisdiction as of April 22, 1997. In the alternative, Cedric argues that the Family Court had subject matter jurisdiction to enter the orders pursuant to HRS chapter 346.

Abastillas responds that the ICA did not err because the discrepancy in the effective date is a legislative error that should be disregarded by this court in favor of the legislature's intended January 1, 1997 effective date.[20] Abastillas also argues in the alternative that the Family Court never had subject matter jurisdiction to enter the orders of April 22, 1997, even prior to the 1996 amendments. For the reasons set forth below, we agree with the ICA's conclusion (although for different reasons) that the Probate Court erred in relying on the April 22, 1997 orders because the Family Court did not have subject matter jurisdiction to enter those orders under either the HUPC or HRS chapter 346.

### 1. The Family Court Did Not Have Jurisdiction over Guardianship of Property Proceedings under the HUPC Before or After January 1, 1997.

As noted by the ICA, the definition and subject matter jurisdiction provisions of the HUPC relating to protection of persons and their property, HRS §§ 560:5–101 and –102, when read together, state in relevant part: "The court has jurisdiction over [guardianship of the property proceedings] and the family court has jurisdiction over guardianship [of the person] proceedings." *See supra* Section I.C (quoting ICA's Opinion at 58–59). Prior to 1997, "court" was in turn defined [21] as "the *circuit* court having jurisdiction in matters relating to trusts and the estates of decedents, missing persons, protected persons, minors and incapacitated persons." HRS § 560:1–201(6) (emphasis added). Because the ICA concluded, based on HRS § 571–11 (1993),[22] that family courts have exclusive jurisdiction over minors, it concluded that the HUPC's definition of "court," which refers to the circuit court having jurisdiction over the estates of minors, included "both the probate court and the family court." [23] ICA's Opinion at 59. The ICA then inserted this definition of "court" into HRS § 560:5–102, yielding the following result: "The [probate court and the family

**20.** Abastillas' third argument is that Cedric should be precluded from raising his jurisdictional argument because he did not argue it in the circuit court or make a motion for reconsideration before the ICA. This contention is without merit, as it has long been settled that parties may raise arguments as to subject matter jurisdiction at any stage in the case. *See, e.g., Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 133, 870 P.2d 1272, 1277 (1994) (stating that the question of subject matter jurisdiction "is valid at any stage of the case").

**21.** The definition of "court" was qualified by the general proviso: "Subject to additional definitions contained in the subsequent Articles which are applicable to specific Articles or Parts, and unless the context otherwise requires...." HRS § 560:1–201.

**22.** HRS § 571–11 states in relevant part as follows:

> **Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:
> (1) Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance....
> (2) Concerning any child living or found within the circuit:
> (A) Who is neglected as to or deprived of educational services because of the failure of

any person or agency to exercise that degree of care for which it is legally responsible;
> (B) Who is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare;
> (C) Who is neither attending school nor receiving educational services required by law whether through the child's own misbehavior or nonattendance or otherwise; or
> (D) Who is in violation of curfew.
> (3) To determine the custody of any child or appoint a guardian of the person of any child.
> ....
> (6) For judicial consent to the marriage, employment, or enlistment of a child, when such consent is required by law.
> (7) For the treatment or commitment of a mentally defective, mentally retarded, or mentally ill child.
> (8) Under the Interstate Compact on Juveniles under chapter 582.
> (9) For the protection of any child under chapter 587.

**23.** The ICA did not articulate any reasoning for its conclusion; rather, it simply quoted the definition of "court" in HRS § 560:1–201, stated that it included both probate and family courts, and added a footnote setting forth the text of HRS § 571–11 as apparent justification for the statement. ICA's Opinion at 59.

court have] jurisdiction over [guardianship of the property] proceedings and the family court has jurisdiction over guardianship [of the person] proceedings." ICA's Opinion at 60 (first alteration in original). In other words, the ICA concluded that under the HUPC prior to January 1, 1997, family courts had concurrent jurisdiction with probate courts over protective proceedings (*i.e.*, guardianships of the property). This interpretation of HRS §§ 560:5–102 and 560:1–201 is wrong in relevant part for the reasons set forth below.

The key difference between family courts and probate courts is that family courts can be presided over by either circuit or district judges, while probate courts are circuit courts that, as a general rule, can be presided over only by circuit judges. A circuit court, on the one hand, is a court of general jurisdiction that happens to have included within its jurisdictional authority probate jurisdiction. *See* HRS § 603–21.6 (1993) ("The several *circuit* courts shall have power to grant probate of wills, ... to appoint guardians of the property, ... and to do all other things as provided in [the HUPC].") (Emphasis added.). The circuit courts are presided over by circuit judges. HRS §§ 603–3 and – 4 (1993). A family court, on the other hand, may be presided over by *either* a circuit judge *or* a district judge. *See* HRS § 571–4 (1993) (providing that circuit judges designated by the chief justice of the supreme court shall be judges of the family court); HRS § 571–8 (1993) (establishing district family courts and providing that the chief justice of the supreme court "may appoint one or more district family judges for each judicial circuit"). That a circuit judge has the same authority whether sitting in family court or in probate is expressly recognized by section 571–4: "Nothing in [HRS chapter 571] shall be construed to limit the jurisdiction and authority of any circuit judge, designated as judge of a family court, to matters within the scope of [HRS chapter 571]." *See also* October 29, 1996 Standing Order re: First Circuit Judges (providing for the converse proposition in the first circuit, *i.e.*, that the jurisdiction and authority of any first circuit judge not designated as a judge of the family court is not limited to matters without the scope of

HRS chapter 571 if a family court matter is assigned to him or her by the Senior Family Judge of the First Circuit).

Returning to HRS § 560:1–201, which defines "court" as "circuit court," it is thus clear that the meaning of the term "court" as used therein would include any circuit judge, whether sitting in family court or probate, but would exclude any district judge, whether sitting in family court or otherwise. In other words, HRS § 560:5–102 should have been read as follows: "The [probate court and the *circuit* family court have] jurisdiction over [guardianship of the property] proceedings and the [*circuit or district*] family court has jurisdiction over guardianship [of the person] proceedings." Here, as noted *supra* note 7, Judge Choy was, at the time he entered the April 22, 1997 orders, a *district* judge appointed under HRS § 571–8, not a circuit judge sitting by designation in family court under HRS § 571–4, and thus he lacked original jurisdiction over guardianships of the property under HRS § 560:5–102 as it stood prior to the 1996 amendments to the HUPC.

We note that Judge Bryant's January 2, 1997 order purporting to grant leave to file the guardianship of the property petition in response to the request to consolidate the proceedings was insufficient to remedy this lack of jurisdiction and give the district family court authority over the guardianship of Kam's property. It is true that a district family court proceeding pursuant to a proper consolidation order would have had the same authority over guardianships of the property as a circuit court. HRS § 560:5–102 ("Where protective and guardianship proceedings relating to the same person have been initiated, they may be consolidated in the court or in the family court as the court *and* the family court in the exercise of their discretion shall determine.") (Emphasis added.). However, the consolidation provision of HRS § 560:5–102 is not applicable here because neither was the guardianship of the property proceeding first properly initiated in the circuit court, nor was there an order from the circuit court transferring or ceding jurisdiction to the district family court in the exercise of discretion. The January 2,

1997 order was insufficient because Judge Bryant was a district family judge, *see supra* note 6, and thus lacked the authority to unilaterally consolidate the guardianship proceedings; were it otherwise, a district court would be allowed to assume the authority of a circuit court of its own accord and the consolidation provision of HRS § 560:5–102 would effectively swallow the rest of the statute in contravention of the statutory language regarding *joint* exercise of discretion by the circuit and district courts.

We note, too, that the October 29, 1996 Standing Order re: District Judges is insufficient to allow district judges to unilaterally assume jurisdiction over guardianships of the property. Although that order is a *necessary* predicate to district judges' exercise of circuit court jurisdiction (in the absence of any other enabling statute or order) because it authorizes them to preside in circuit courts as needed, it is not *sufficient* because it allows district judges to hear only those circuit court matters "as shall be assigned by the appropriate Administrative Judge of the Circuit Court" in coordination with the Senior Family Judge or Administrative Judge of the District Court. October 29, 1996 Standing Order re: District Judges. In the instant case, there was no order from the Administrative Judge of the First Circuit, in coordination with the Senior Family Judge of the First Circuit, assigning either Judge Bryant or Judge Choy to hear the guardianship of Kam's property. Accordingly, the April 22, 1997 orders cannot be sustained in reliance on the October 29, 1996 Standing Order re: District Judges.

Finally, with respect to whether the district family courts had jurisdiction over guardianships of the property under the HUPC after the 1996 amendments, the answer is the same—they did not—because, even after the amendments, the term "court" in the HUPC was still defined as "circuit court." HRS § 560:1–201 (1997). Accordingly, and thus without having to consider the parties' arguments regarding the effective date of the 1996 amendments (since district courts had original jurisdiction over guardianships of the property neither before nor after the amendments), we agree with the ICA's ultimate conclusion that subject matter jurisdiction for the April 22, 1997 order voiding the 1995–96 estate documents was lacking under the HUPC.

**2. The Family Court Did Not Have Jurisdiction Pursuant to HRS Chapter 346.**

Cedric argues in the alternative that even if the Family Court did not have jurisdiction pursuant to HRS chapter 560, it nevertheless had jurisdiction under HRS chapter 346 even though it did not expressly act pursuant to that authority. HRS § 571–14(10) provides that the family courts shall have exclusive original jurisdiction for "the protection of dependent adults under [HRS] chapter 346, part X." As set forth *supra* note 1, HRS § 346–223 provides that "[t]he family court shall have jurisdiction in protective proceedings under this part concerning any dependent adult . . . [who] has been abused and is threatened with imminent abuse[.]" Abastillas counters that HRS chapter 346 is also inapplicable in this case. We agree with Abastillas for the reasons set forth below.

As the title of chapter 346, "Department of Human Services," makes clear, this statute is for the benefit of DHS and does not create a right to proceed for private litigants. *See* HRS § 346–227 (1993) ("Upon receiving a report that abuse of a dependent adult has occurred and is imminent, *the department* shall cause an investigation. . . .") (Emphasis added.); HRS § 346–228 (1993) ("Upon investigation *the department* shall take action . . . and shall have the authority to . . . [s]eek an order for immediate protection [under HRS § 346–231]. . . .") (Emphasis added.); HRS § 346–231(a) (1993) (stating that "*the department* shall seek an order for immediate protection") (emphasis added); HRS § 346–231(e) (1993) (stating that "orders under section 346–232 and [346–231] may be obtained . . . by *the department*") (emphasis added); HRS § 346–231(f) (1993) ("If a written order for immediate protection is issued, *the department* shall file a petition invoking the jurisdiction of the court. . . .") (Emphasis added.). In other words, even assuming that DHS had authority to have the 1996 will voided in FC–AA–96–0003, that authority

could not provide a jurisdictional basis for an order to that effect (1) in another action (2) sought by a party other than DHS. Here, the motion to void the 1995–96 estate documents was brought in FC–G–96–0299, not FC–AA–96–0003, and by the co-guardians of Kam's person, not DHS. Therefore, HRS § 346–231 does not provide an alternative basis for jurisdiction.[24]

For the foregoing reasons, we hold that the Family Court did not have jurisdiction over guardianships of the property under either HRS chapter 560 or HRS chapter 346 such as to validly enter its April 22, 1997 orders. Accordingly, those orders were void *ab initio* and should not have been given any effect in the Probate Court proceedings below. As such, the ICA correctly concluded that the Probate Court erred as a matter of law in finding that the 1997 order voiding the 1995–96 estate documents was "valid and enforceable."

B.  *The Relevance and Preclusive Effect of the Family Court's Rulings in FC–AA–96–0003 Are Not Properly Before the Court at This Time.*

■ Although the Family Court did not have subject matter jurisdiction to enter its orders of April 22, 1997, and thus the judgments on the petition for instructions and petition to vacate must therefore be vacated and remanded to the Probate Court for further proceedings, we next consider the ICA's conclusion that "Abastillas is bound by [the Family Court's] decisions" in FC–AA–96–0003 with respect to, *inter alia*, Kam's capac-

ity.[25] ICA's Opinion at 57. In her application, Abastillas charges that the ICA committed grave error in so holding because those findings were not actually litigated. For the reasons set forth below, we hold that neither the preclusive effect nor relevance of the Family Court findings in FC–AA–96–0003 are properly within the scope of appellate review, and thus the ICA's conclusions in both regards were superfluous and must be disregarded on remand.

To begin, we note that nowhere in the record does it appear that the Probate Court gave preclusive effect to, or mentioned in any way, the Family Court rulings in FC–AA–96–0003. Instead, the oral and written rulings of the Probate Court refer only to the "valid and enforceable" April 22, 1997 order of the Family Court voiding the 1995–96 estate documents, which was entered in FC–G–96–0299. In other words, the Probate Court was giving preclusive effect to the Family Court's orders in FC–G–96–0299, not to the rulings entered in FC–AA–96–0003. While the April 1997 orders of the Family Court in FC–G–96–0299 may well have (erroneously) relied on the earlier rulings in FC–AA–96–0003, the ICA on appeal was not directly reviewing the April 1997 order (or any other Family Court ruling, for that matter) for error; rather, it was reviewing the September 2002 judgments of the Probate Court.

The foregoing highlights a crucial distinction, because the issue of whether a judgment is being attacked directly or collaterally determines the scope of review. "A collater-

---

24.  We briefly note two additional, independent jurisdictional defects under chapter 346. First, prior to the issuance of orders under sections 346–231 and –232, the court must find probable cause that abuse is imminent. HRS § 346–231(c). No such finding was made in FC–G–96–0299. Second, chapter 346 clearly states that a consolidation order is required before a family court proceeding under chapter 346 may exercise jurisdiction under the HUPC. *See* HRS § 346–235 (1993) ("A proceeding for the appointment of a guardian of the person or of the property under article V of [the HUPC] may be consolidated with the proceedings under this part as the applicable circuit court and the family court, in the exercise of their discretion, shall permit."). As set forth above in Section III.A.1, Judge Bryant's January 2, 1997 order was not sufficient in this regard.

25.  In the portion of its opinion set forth *supra* note 15, the ICA also reasoned that the findings in FC–AA–96–0003 were irrelevant (or at least not determinative) with respect to Kam's capacity to execute the 1995–96 estate documents because those findings only establish Kam's capacity as of July 18, 1996, while the challenged estate documents were all executed prior to that date. Because the Family Court orders contain no findings as to Kam's capacity at the times of execution of the estate documents, the ICA reasoned that the Probate Court's judgments denying the petition to vacate and the petition for instructions were wrong wholly apart from the jurisdictional defect. ICA's Opinion at 62.

al attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." *Kapiolani Estate v. Atcherly*, 14 Haw. 651, 661 (1903), *quoted in First Hawaiian Bank v. Weeks*, 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989). In this case, the instant proceedings were instituted not to impeach any Family Court orders, but instead to settle the administration of Kam's estate; accordingly, the challenge to the 1997 Family Court orders represents a collateral attack.

The rule in this jurisdiction is that the scope of appellate review of a judgment or order being collaterally attacked (as opposed to directly reviewed) is limited to the question of jurisdiction. *See First Hawaiian Bank*, 70 Haw. at 398, 772 P.2d at 1191 ("If it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack.") (Brackets omitted.) (Quoting *Gamino v. Greenwell*, 2 Haw.App. 59, 63–64, 625 P.2d 1055, 1059 (1981) (citing *Kapiolani Estate*, 14 Haw. at 664 (Frear, C.J., concurring)).). Consequently, the ICA was faced with only two possible issues: (1) the question whether the Family Court had jurisdiction to enter its April 22, 1997 orders in FC–G–96–0299 (*i.e.*, a collateral attack

question); and (2) in the event that the Family Court had jurisdiction to enter those orders, the question whether and to what extent the Probate Court properly applied the doctrines of issue and claim preclusion in giving the orders preclusive effect in the adjudication of Cedric's and Abastillas' petitions (*i.e.*, a direct review question). Having correctly answered the first question in the negative, the ICA had no need or authority to further consider either the second question or any other issue pertaining to the prior Family Court proceedings. In other words, it was error for the ICA to consider either the preclusive effect or the relevance of the Family Court orders in FC–AA–96–0003 because those issues were not properly within the scope of either direct review or collateral attack.[26]

### C. The Probate Court Did Not Abuse Its Discretion in Denying Smith and Abastillas' Creditors' Petition.

Although not directly raised in Cedric's application, we also now address that part of the ICA's decision vacating the Probate Court's judgment with respect to Smith and Abastillas' petition for allowance of creditors' claims.[27] As the ICA demonstrated at

26. While the relevance and the preclusive effect of the Family Court's findings in FC–AA–96–0003 may become issues on remand, such questions can be decided based only on contingencies and facts not presently in the record. For example, we can think of at least the following contingencies that must come to pass before the issues of either relevance or preclusive effect could be studied on appeal: (1) the Probate Court on remand grants Abastillas' motion to vacate the order admitting the 1988 will to probate and denies Cedric's petition for instructions; (2) a contest ensues between the 1988 and 1996 wills; (3) Cedric asserts that the 1996 will is invalid because Kam lacked capacity to execute it; (4) Cedric proffers, and the court accepts, foundational evidence that Kam's capacity (or lack thereof) in July 1996 is relevant to (or determinative of) her capacity at the time the 1995–96 will and estate documents were executed; and (5) Cedric proffers the Family Court findings in FC–AA–96–0003 and asserts that Abastillas is collaterally estopped from challenging Kam's (lack of) capacity in July 1996. Factoring in additional vagaries such as the weight given to the evidence by the trier of fact (which will be beyond the scope of appellate review) and whether other evidence, if any, of Kam's capacity is proffered (which would bear on whether the preclusive

effect, if any, given to the Family Court rulings by the Probate Court could be considered harmful error on appeal), it becomes clear that the issues were and are too abstract, speculative, and unripe for decision at this time. Accordingly, we hold that the ICA's conclusions in this regard, even when viewed prospectively, are premature and contravene this court's long-standing prohibitions against rendering advisory opinions, *Wong v. Bd. of Regents*, 62 Haw. 391, 394–95, 616 P.2d 201, 204 (1980), and deciding unripe questions, *Trs. of Office of Hawaiian Affairs v. Yamasaki*, 69 Haw. 154, 171–72, 737 P.2d 446, 456 (1987). As such, the Probate Court is free to consider *de novo* both the relevance and preclusive effect of the Family Court's rulings in FC–AA–96–0003, should those issues arise on remand.

27. We reach the ICA's vacatur of the creditors' petition judgment because we deem it assigned as error by implication. That is to say, Cedric challenged the ICA's conclusion that the Probate Court's judgments on Abastillas' petition to vacate and Cedric's petition for instructions were defective due to the Family Court's lack of subject matter jurisdiction to enter its April 1997 orders. Because the ICA vacated the creditors'

length in its opinion, that petition was denied for reasons of procedural default (*i.e.*, untimeliness of Smith and Abastillas' reply under HPR Rule 10(c) and failure to include the available, relevant information in their original petition) and in an exercise of discretion wholly unrelated to either the issue of subject matter jurisdiction of the Family Court in 1997 or to the issue of issue preclusion. Nevertheless, the ICA vacated the Probate Court's judgment on the creditors' petition "in light of [its] decision vacating the final judgments pertaining to the probate of the will and the petition for instructions[.]" ICA's Opinion at 72. For the reasons set forth below, we reverse that part of the ICA's opinion.

First, we agree with the ICA that the proper standard of review of both the decision not to excuse a procedural default and the refusal to assign the matter for civil trial (or retain for a deferred hearing) is abuse of discretion. With respect to excuse of procedural default, we have previously held in similar circumstances that a court has discretion to accept or reject an untimely filed brief. *See, e.g., Yee v. Okamoto*, 44 Haw. 119, 120, 352 P.2d 854, 855 (1960) (stating that the court has discretion whether to accept or reject a late brief based on the reasons for the untimeliness). With respect to the Probate Court's handling of the creditors' petition, HPR Rule 20, which governs assignment of contested matters, employs the word "may," which denotes discretion. *See* HPR Rule 20(a) ("The court by written order *may* retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court.") (Emphasis added.); *State v. Kahawai*, 103 Hawai'i 462, 465, 83 P.3d 725, 728 (2004) ("The term 'may' [used] in describing the court's power ... denotes discretion.").

Second, we agree with the ICA that the Probate Court did not abuse its discretion. Here, the Probate Court acted within its discretion to reject Smith and Abastillas' reply because (1) it was untimely under HPR Rule 10(c) in that it was filed less than 72 hours before the hearing date, and (2) contained material that could and should have been included in the initial petition. The Probate Court also acted within its discretion in summarily dismissing the creditors' claim without assigning the matter for civil trial or deferred hearing because, especially without the material in the reply, it did not clearly exceed the bounds of reason in concluding that Smith and Abastillas had failed to establish factual and legal bases for their claims.

Despite (or, more precisely, because of) our agreement with the ICA that the Probate Court did not abuse its discretion in denying the creditors' petition, we cannot agree with the ICA's decision to nevertheless vacate that judgment and remand. Where the Probate Court's judgment was not based on an abuse of discretion and where the ICA's vacatur of the other two Probate Court judgments was on grounds not implicated in the creditors' petition judgment, there was no basis for the ICA to also vacate the judgment on the creditors' petition. That Abastillas now has a chance of prevailing on her heirship claim does not alter or excuse the unrelated defects in her and Smith's creditors' petition. Accordingly, that portion of the ICA's opinion vacating the September 13, 2002 judgment of the Probate Court denying the creditors' petition of Smith and Abastillas must be reversed.

## IV. CONCLUSION

Based on the foregoing, we reverse the ICA's August 8, 2005 memorandum opinion in part and affirm in part. Specifically, (1) that portion of the ICA's opinion vacating the September 13, 2002 judgment of the Probate Court denying the September 11, 2000 petition of Abastillas and Smith for allowance of creditors' claims against Kam's estate for legal and personal services rendered is reversed and the judgment of the Probate Court is affirmed for the reasons set forth above; (2) that portion of the ICA's opinion vacating the September 13, 2002 judgment of the Probate Court denying the November 2,

---

petition judgment not for any independent error, but only in light of the vacatur of the other two judgments, Cedric's challenge to the propriety of

the ICA's rulings as to the latter two judgments necessarily implicates the ICA's ruling as to the former.

2000 petition of Abastillas to vacate the Probate Court's July 17, 2000 probate order naming Cedric as personal representative of the Kam estate pursuant to Kam's 1988 will is affirmed for the reasons set forth above; and (3) that portion of the ICA's opinion vacating the September 16, 2002 judgment of the Probate Court granting Cedric's October 11, 2000 petition for instructions is affirmed for the reasons set forth above. Accordingly, we remand this case to the Probate Court for further proceedings consistent with this opinion.