RUDY GAMINO, Plaintiff-Appellant, *v.* MARC WILFRID GREENWELL, BRADLEY McCARTER, LTD., ISLAND HOMES, Defendants-Appellees

NO. 6903

MARCH 23, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

The issue in this case is whether a party in a family court case may pursue a civil court action involving different parties and different issues when the result sought would contradict a final and unappealed order issued in the family court case.

We hold that the civil court action may not be pursued in such a situation.

Plaintiff-Appellant Rudy Gamino and Doris Gamino were parties in a divorce action. By order dated March 24, 1977, Family Court Judge Vitousek awarded the parties' Pacific Heights house half to each party, ordered it sold, appointed an appraiser, and empowered the parties' children's guardian ad litem to "select a real estate broker for the sale of the property at no less than the appraisal price." The order further stated that "[t]he house may be listed at a higher price if, in the opinion of the broker selected, and with the concurrence of counsel for the parties, a higher price is warranted.

Counsel for the parties shall have the authority, if the house is not sold at the listed [price], to reduce same. In the event counsel are unable to agree, the Court shall determine the sales price."

The house was appraised at $134,000 and Defendant-Appellee Bradley-McCarter, Ltd., was selected as broker. By a realtor's standard form Deposit, Receipt, Offer and Acceptance, dated May 22, 1977, Defendant-Appellee Marc Greenwell, through his broker Defendant-Appellee Island Homes, offered to purchase the house at $130,000 as follows: $54,500 cash, $44,000 assumption of first mortgage, and $31,500 by an exchange of 1710 Punahou Street, Apartment 101, or from the net proceeds of the sale of said apartment.

By a realtor's standard form Seller's Counter Offer, dated June 2, 1977, which was signed by counsel for each party, the sellers asked for the final $31,500 by way of a one-year promissory note secured by a second mortgage with interest at 9 percent per annum, payable at no less than $238 per month. Mr. Greenwell accepted this counter offer. After Greenwell accepted the counter offer, Mr. Gamino offered to purchase the house at $130,000 via $35,000 down and $95,000 via a Veterans Administration guaranteed mortgage loan which he agreed to apply for within three working days from acceptance of his offer.

Sometime thereafter, Mrs. Gamino sought to have the family court apply Hawaii Family Court Rules (HFCR), rule 70 (1977),[1] and have the court clerk sign the conveyance documents because Mr. Gamino refused to do so. At an unrecorded chamber conference on July 29, 1977, the family court judge indicated an inclination to grant the motion because, although she felt she was powerless to question the validity of the contract, she had the power under HFCR, rule 70 (1977), to require Mr. Gamino, or someone in his stead, to effectuate it.[2]

---

[1] [2] Rule 70, HFCR (1977), states:

RULE 70. DECREE FOR SPECIFIC ACT.

(a) Failure to Comply. If a decree directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act

Soon thereafter, on August 1, 1977, Mr. and Mrs. Gamino entered into a Stipulation Pursuant to Family Court Rule 70 in which they stipulated the following:

[T]hat the Chief Clerk of the First Circuit is hereby authorized to execute any and all documents necessary or appropriate for the conveyance of that . . . real property . . ., but shall not execute said documents until or after August 5, 1977.

\* \* \* \* \*

Nothing in this Stipulation shall be construed as [Mr. Gamino's] consent or assent to the sale of said real property and [Mr. Gamino] hereby reserves all rights and causes of action he may have against any and all parties respecting said sale.

On August 4, 1977, Judge Vitousek approved and ordered the stipulation into effect.

On August 5, 1977, Mr. Gamino informally applied to civil court for an order stopping the sale. At an unrecorded chamber conference, Judge Fong informally indicated that he did not think he had the power to restrain what the family court judge had ordered. Within minutes thereafter, Mr. Gamino filed in the circuit court a Complaint for Declaratory Relief and a Notice of Lis Pendens. Bradley-McCarter, Ltd., responded with a HRCP, rule 12(b), as amended in 1972, motion to dismiss and to quash notice of lis pendens with which Greenwell joined. On August 15, 1977, immediately prior to the hearing on the motion to dismiss, Mr. Gamino filed an amended complaint. In his amended complaint, he alleged that his attorney had no authority, express or implied, to execute the counter offer in his behalf. He prayed for three declarations: (1) That the contract to sell the property and all subsequent documents of conveyance are of no binding effect; (2) That Bradley-McCarter, Ltd., and Island Homes are not entitled to a sales commission; and

---

to be done at a cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

(b) Sequestration; Contempt. On application of the party entitled to performance, the court may issue a writ of sequestration against the property of the disobedient party to compel obedience to the decree. The court may also in proper cases adjudge the party in contempt and make any appropriate orders provided by law.

(3) That he owns one-half interest in fee simple. Bradley-McCarter, Ltd., again filed a motion to dismiss and Greenwell joined. After a hearing on the motion to dismiss, the civil court found and concluded, *inter alia:*

> 6. That in as much as the Family Court has ordered the sale of the real property involved, this Court will not hear or decide any issues or facts which should have been brought up before the Family Court.

The court thereupon dismissed the amended complaint "on the ground of *res judicata*" and quashed the notice of lis pendens.

On appeal Mr. Gamino contends that the issue of whether Mr. Gamino's attorney had authority to bind him to the counter offer and to the resulting contract has never been litigated and therefore cannot be *res judicata.*[3] Further, he alleges that the family court case and the civil court case involve different parties and a different cause of action; therefore, the civil cause of action is not *res judicata.*

HRCP, rule 12(b), as amended in 1972, states that if, on a motion asserting the defense of failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. Since matters outside the pleading were presented to and not excluded by the court, the HRCP, rule 12(b)(6), as amended in 1972, motion was automatically converted into a HRCP, rule 56, as amended in 1972, motion.

Therefore, the issues before the lower court and this court are whether the matters on record show that there is no genuine issue as to any material fact, and whether movants are entitled to judgment as a matter of law. *Big Island Small Ranchers Ass'n v. State,* 60 Haw. 228, 588 P.2d 430 (1978).

We find that Judge Fong made the correct decision. However, in so doing, we apply the settled rules of collateral attack rather than of *res judicata* to this case.

There is some relationship between the doctrines of *res judicata* and collateral attack in that both doctrines involve the effect of a judgment in subsequent independent legal proceedings and of the

---

[3] Literally, *res judicata* means a matter adjudged. 46 AM. JUR. 2d *Judgments* § 394 (1969).

application of the rule of conclusiveness of judgments, and both are based upon the public interest in the final adjudication of controversies. There is a difference, however, in the impact of the two doctrines: A determination of the question whether a particular judgment may be subjected to a collateral attack does not necessarily involve an inquiry into the scope and effect of the judgment as a former adjudication upon the facts or causes of action included therein. 46 AM. JUR.2d *Judgments* § 399 (1969).

The Hawaii Supreme Court clearly stated what constitutes collateral attack in *Kapiolani Estate v. Atcherly,* 14 Haw. 651 (1903):

"A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." — 17 Am. & Eng. Ency. Law, 2nd ed., 848. [Further citations omitted.] "The word 'collateral' ", in this connection, "is always used as the antithesis of 'direct', and it is therefore wide enough to embrace any independent proceeding. To constitute a *direct* attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose. If an appeal is taken from a judgment, or a writ of error, or if a motion is made to vacate or set it aside on account of some alleged irregularity, the attack is obviously direct, the sole object of the proceeding being to deny and disprove the apparent validity of the judgment. But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral and falls within the rule." — 1 Black on Judgments, Sec. 252. "A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law. *** A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law." — Van Fleet, Collateral Attack, pp. 4, 5.

14 Haw. at 661.

The general rule is that a collateral attack may not be made upon a judgment rendered by a court of competent jurisdiction. *Kapiolani Estate v. Atcherly, supra. See also Carey v. Hawaiian Lumber Mills, Ltd.,* 21 Haw. 311 (1912); *Estate of Kamauoha,* 26 Haw. 439 (1922). If there is only a question of error or irregularity and not of jurisdiction, it

cannot be raised on collateral attack. *Kapiolani Estate v. Atcherly, supra,* at 664 (Frear, C.J., concurring opinion). In this context, the rule is the same with respect to orders. 56 AM. JUR. 2d *Motions, Rules, and Orders* § 46 (1971).

Here, clearly, the family court had jurisdiction over both the parties and the subject matter and Judge Vitousek exercised it. Fairly construed, her March 24, 1977, order required that the house be sold by a broker selected by the children's guardian ad litem at the appraisal price or at a higher price agreed to by the broker and both counsel or at a lower price agreed to by both counsel. If either party refused to perform any act necessary to accomplish the sale, then Judge Vitousek had the power to order him or her to do the act or, pursuant to HFCR, rule 70 (1977), to have someone else do it for him or her. Thus, Judge Vitousek authorized the broker to enter into a contract to sell the property at the appraisal price or at a price agreed to by counsel. That is basically what happened. The fact that the attorneys signed the contract rather than the broker is, in this case, a matter of form, not substance.

Thereafter, Mrs. Gamino filed her HFCR, rule 70 (1977), motion to have the court clerk sign the conveyance documents for the recalcitrant Mr. Gamino. At that point, Mr. Gamino could have attacked the motion directly on whatever grounds he deemed appropriate. If he wanted to complain about his counsel's lack of authority to sign the contract or to agree to a price lower than the appraisal, *that was the time to do it.*

We find Mr. Gamino's assertion that he was deterred from such direct attack by Judge Vitousek's expressed belief that the contract dispute was not within her jurisdiction to be without merit. These expressions were made informally rather than in response to an on-the-record challenge by Mr. Gamino. They should not have deflected Mr. Gamino from pursuing the direct avenue open to him. Instead of resisting directly, Mr. Gamino entered into a stipulation in which he, on the one hand, consented to the court's ordering him to go through with the sale to Mr. Greenwell but, on the other hand, he withheld his consent to the sale and reserved all rights and causes of action against all parties respecting said sale.

In our view, once Mr. Gamino consented to the court's ordering him to go through with the sale, and the time to take a direct appeal had expired without an appeal being taken, he had no rights and

causes of action against any parties respecting the sale. The fact that a by-product of Judge Vitousek's decision in the divorce case was the fruition of a sales contract which he disputed does not change the fact that it was the court's order, not the disputed sales contract, which caused the closing of the sale to Mr. Greenwell. Mr. Gamino having stipulated to and not having appealed the order, it is binding on him and he may not collaterally attack it.

We affirm the lower court's dismissal of the amended complaint and its quashing of the notice of lis pendens.

*David M. Robinson* on the brief for plaintiff-appellant.

*David Bettencourt* for defendant-appellee Greenwell.

*Francis M. Izumi* for defendant-appellee Bradley-McCarter, Ltd.

*D. Scott MacKinnon* for defendant-appellee Island Homes.