185 P.3d 887

Craig SMALLWOOD, Plaintiff–Appellant,

v.

CITY AND COUNTY OF HONOLULU,
Defendant–Appellee.

No. 27285.

Intermediate Court of Appeals of Hawai'i.

March 14, 2008.

Carl Foytik, on the briefs, for Plaintiff–Appellant.

Don S. Kitaoka, Deputy Corporation Counsel, on the briefs, for Defendant–Appellee.

WATANABE, Presiding Judge, and NAKAMURA, and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Plaintiff–Appellant Craig Smallwood (**Smallwood**) appeals from a Judgment filed on February 23, 2005 in the Circuit Court of the First Circuit (**Circuit Court**) in Civil No. 04–1–2315–12.[1] The Circuit Court entered Judgment in favor of Defendant–Appellee City and County of Honolulu (**City**) upon the Circuit Court's February 23, 2005 Order Granting City's Motion to Dismiss Smallwood's Complaint (**Order Granting Dismissal**). The Circuit Court based its dismissal of the Complaint on two findings: (1) that the claims set forth in the Complaint were previously adjudicated in *Smallwood v. City*, Civil No. 04–1–0974–05 (**Prior Litigation**) and, therefore, the Complaint constituted an impermissible "collateral attack" on a prior judgment; and (2) that the Circuit Court lacked subject matter jurisdiction over certain claims set forth in the Complaint because Smallwood failed to exhaust his administrative remedies as to those claims.

On appeal, Smallwood argues that the Circuit Court erred in finding that the Complaint constituted a collateral attack on the judgment in the Prior Litigation. Smallwood does not challenge on appeal the Circuit Court's second finding that it lacked jurisdiction over certain claims in the Complaint based on Smallwood's failure to exhaust administrative remedies.

The judgment in the Prior Litigation: (1) dismissed without prejudice a prior complaint by Smallwood against City; and (2) dismissed with prejudice certain claims for injunctive relief that were actually adjudicated on the merits in that case. Smallwood's Complaint herein does not seek to indirectly set aside, invalidate, avoid, or impeach the judgment in the Prior Litigation through an independent action seeking an alternative form of relief or result. Therefore, we hold that the filing of the Complaint did not constitute an impermissible collateral attack on the prior judgment. The Circuit Court's ruling that it lacked subject matter jurisdiction over certain of Smallwood's claims was not an adjudication on the merits and, accordingly, the Circuit Court's dismissal with prejudice must have been based on the erroneous application of the collateral attack doctrine. We vacate the Judgment and Order Granting Dismissal and remand for further proceedings not inconsistent with this opinion.

I. *Relevant Facts*

A. *The Prior Litigation*

The Prior Litigation was initiated on May 26, 2004, with Smallwood's pro se filing of an Ex Parte Motion for Temporary Restraining Order Against the Issuance of Permits (and for Preliminary Injunction) (**Prior Injunctive Relief Motion**), rather than a complaint. Smallwood served the Prior Injunctive Relief Motion on City. Haseko (Ewa), Inc. (**Haseko**), the developer whose project would have been impeded by the injunctive relief, intervened and opposed the Prior Injunctive Relief Motion.[2] After three days of evidentiary hearings, the Prior Injunctive Relief Motion was denied. On September 14, 2004, the circuit court entered an Order Denying Plaintiff's Ex Parte Motion for Temporary Restraining Order Against Issuance of Permits (and for Preliminary Injunction) in the

1. The Honorable Sabrina S. McKenna presided.

2. It appears from the record that the Circuit Court below had before it only limited portions of the records and files in the Prior Litigation when the Court determined that this case constituted an impermissible collateral attack on the Judgment in the Prior Litigation. Specifically, the parties submitted: (1) the Complaint filed in the Prior Litigation on August 9, 2004; (2) an excerpt of the transcript of the October 25, 2004 hearing on Haseko's Motion to Dismiss the Com-

plaint filed in the Prior Litigation; (3) the November 9, 2004 Order Granting Haseko's Motion to Dismiss and City's Joinder; (4) the first Judgment, entered on November 18, 2004; and (5) the Amended Judgment, entered on January 24, 2005. This court takes judicial notice of additional portions of the record in the Prior Litigation. *See In re Estate of Kam*, 110 Hawai'i 8, 12 n. 5, 129 P.3d 511, 515 n. 5 (2006) (where the record on appeal does not provide sufficient information, the court may take judicial notice of the records and files in a related case).

Prior Litigation (**Prior Order Denying Injunctive Relief**).

Two and one-half months after the Prior Injunctive Relief Motion was filed, and after two of the three hearing days on that motion, Smallwood filed pro se a Complaint for Declaratory Judgment in the Prior Litigation, on behalf of himself and various Doe Plaintiffs, naming City, Haseko, and various Doe Defendants. No summons was issued. The Complaint in the Prior Litigation included a ten-paragraph introduction, thirty-one paragraphs of "facts and allegations" and prayed for various relief related to the removal of a retaining wall bordering the Ocean Pointe Development along Papipi Road in 'Ewa Beach, as well as compensatory and punitive damages to Smallwood and others for injuries that allegedly stemmed from the development project.

On August 30, 2004, Haseko filed (in the Prior Litigation) a Motion to Dismiss and/or, in the Alternative, Motion for a More Definite Statement and to Strike Portions of the Complaint. On August 31, 2004, City filed a Joinder. Haseko's Motion to Dismiss and City's Joinder came on for hearing on September 29, 2004 and October 25, 2004. At the October 25, 2004 hearing in the Prior Litigation, the colloquy between the court and counsel included (highlights added):

THE COURT: Well, this case has had an interesting procedural backdrop. Haseko intervened. There was never even an initial complaint regarding Haseko. There's never been a summons. Many of the claims here purport to be sort of on the—like a class action, without any of the real allegations described.

It's just very hard to figure out what exactly is going on. And in light of the procedural background, in light of the complaint as it presently is worded, and the fact that there's been no summons, *the court grants the motion to dismiss. It will be without prejudice* if Mr. Smallwood or his counsel, you, Mr. Foytik, can—*you're free to refile a new action*, I guess is what I'm saying, *appropriately if you care to.*

MR. FOYTIK: I—I'd ask the court to reconsider. And the reason that is *if this is dismissed without prejudice, the court's prior rulings, as to the injunctive*

*com-complaint, as to the preliminary injunction go away.* And they—as Haseko's pointed out, that you've had three days of hearings on this, and I think that it would—it would save everybody time and effort to—to go forward in this action rather than wiping the slate clean and allowing Mr.—

THE COURT: Oh, *I don't think any slate gets wiped clean.*

MR. FOYTIK: I believe so.

THE COURT: Excuse me?

MR. FOYTIK: I believe so, yes, it does. Hang on.

The—the—if the—if the case is dismissed without prejudice, all the—all the rulings in the case go away. That there's—there's no—there's no judgment on the case. There's no—there's no consideration of the case on its merits if they're—if it's dismissed without prejudice.

THE COURT: Mr. Ishikawa?

MR. ISHIKAWA: Yes. Yes, Your Honor. We believe that the granting of the motion to dismiss without prejudice would be a final order. We will prepare the applicable judgment.

THE COURT: Okay. Your oral request to reconsider is denied.

On November 9, 2004, the court in the Prior Litigation entered an Order Granting Haseko's Motion to Dismiss the Prior Litigation and City's Joinder therein (**Prior Order Granting Dismissal**). In the Prior Order Granting Dismissal, the court ordered that Smallwood's Complaint "setting forth claims for injunctive relief, declaratory relief, property damage, intentional infliction of emotional distress, nuisance, trespass, failure to obtain either an Environmental Assessment or an Environmental Impact Statement, use of intimidation, threats and violence to suppress opposition to development, for administrative irregularity, and for punitive damages *is dismissed without prejudice*." (Emphasis added.)

On November 18, 2004, the court in the Prior Litigation entered a Judgment on the Prior Order Denying Injunctive Relief, and the Prior Order Granting Dismissal (**First Judgment**). On January 24, 2005, the court

in the Prior Litigation entered a First Amended Judgment, with certain clerical corrections, as follows (**Amended Judgment**):

Pursuant to Rules 54 and 58 of the Hawai'i Rules of Civil Procedure, the ... [Prior Order Denying Injunctive Relief], and the ... [Prior Order Granting Dismissal],

JUDGMENT IS HEREBY ENTERED AS FOLLOWS:

(1) In favor of Intervenor–Defendant Haseko (Ewa), Inc., and Defendant City and County of Honolulu, and against Plaintiff Craig Smallwood, on the claim for relief in Plaintiff's Complaint for Declaratory Judgement (sic), filed August 9, 2004, and Plaintiff's Ex Parte Motion for Temporary Restraining Order Against Issuance of Permits (and for Preliminary Injunction), filed September 14, 2004, as to Plaintiff's claim for injunctive relief to restrain issuance of permits to Haseko (Ewa) Inc., remove the wall on Haseko (Ewa) Inc.'s Ewa property and otherwise terminate construction by Haseko (Ewa) Inc. at the subject location.

(2) In favor of Intervenor–Defendant Haseko (Ewa), Inc., and Defendant City and County of Honolulu, and against Plaintiff Craig Smallwood, on the claim for relief in Plaintiff's Complaint for Declaratory Judgement (sic), filed August 9, 2004, as to Plaintiff's claim for declaratory relief.

(3) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... for property damage.

(4) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... for intentional infliction of emotional distress.

(5) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... for nuisance.

(6) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... for trespass.

(7) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint for ... [failure to obtain an EA or EIS].

(8) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... [alleging] intimidation, threats and violence to suppress opposition to development.

(9) [In favor of Haseko and City and against Smallwood] ... on the claim for relief in Plaintiff's Complaint ... [alleging] administrative irregularity.

(10) [In favor of Haseko and City and against Smallwood] ... on the claim for punitive damages.

(11) All other claims and parties are dismissed.

The Amended Judgment in the Prior Litigation referenced two Orders: (1) the November 9, 2004 Prior Order Granting Dismissal, which was submitted to the Circuit Court below; and (2) the September 14, 2004 Prior Order Denying Injunctive Relief, which was not presented to the Circuit Court below.[3] Although not a part of the record in this case, we take judicial notice of the Prior Order Denying Injunctive Relief (*see* n. 2, *supra*), which set forth Findings of Fact, Conclusions of Law and Orders, including (emphasis added):

### *FINDINGS OF FACT*

...

2. On May 26, 2004, Plaintiff Craig Smallwood ("Smallwood") filed an Ex Parte Motion for a Temporary Restraining Order Against Issuance of Permits (and for Preliminary Injunction) **to enjoin City** and County of Honolulu ("City") **from issuing a building permit or any other approvals to HASEKO** (Ewa), Inc. ("Haseko") **for a retaining wall bordering the Ocean Pointe Development along Papipi Road ("Retaining Wall").**

...

---

**3.** In the Prior Litigation, Smallwood sought clarification of the Amended Judgment to reflect that the Complaint was dismissed without prejudice. While Haseko and City successfully opposed his request based on procedural grounds, they did not argue that the Amended Judgment effected a dismissal with prejudice of those claims.

### CONCLUSIONS OF LAW

. . .

3. The Court finds that as a matter of law, Smallwood has not met his burden of proving that he is likely to prevail on the merits.

4. The Court finds that as a matter of law, Smallwood has not met his burden of proving that the Retaining Wall has caused irreparable harm or that it will cause irreparable harm.

5. The Court further finds that the judicial intervention sought by Plaintiff is premature and would interfere with the City's comprehensive, orderly, and established planning and permitting process, which specifically includes public notification requirements, opportunity for public input, and an established administrative appeal process to contest the [Planned Development Housing] permit application.

### ORDER

Based upon the foregoing, it is hereby ORDERED:

1. The temporary restraining order is DISSOLVED.

2. Smallwood's ex parte motion for preliminary injunction is DENIED.

3. After consolidating the hearing with a trial on the merits, pursuant to *Haw. R. Civ. P.* 65(a)(2), any and all portions [sic] and claims contained in Plaintiff's Complaint filed on August 9, 2004 requesting a temporary restraining order, injunctive relief, or an order to demolish the Retaining Wall are hereby DENIED and DISMISSED.

### B. *The Proceedings Below*

Smallwood filed the Complaint underlying this appeal pro se on December 15, 2004, although counsel later entered a special appearance. The Complaint did not specifically name the statutory provision(s), rule(s), regulation(s), and/or common law cause(s) of action upon which the claims were based. The Complaint included, however, a two-paragraph introduction and twenty-two factual allegations, the gravamen of which involved an alleged plan for stormwater and runoff drainage going to the beach and ocean at Onelua Beach Park, near Smallwood's home, without a proper environmental assessment. In the Complaint, Smallwood prayed for what appears to be injunctive or declaratory relief related to the construction of the Kaloi Gulch drainage project. It does not appear from the Complaint that Smallwood seeks the same injunctive relief herein as in the Prior Litigation, but it is unclear and we do not rule out that possibility.

On January 4, 2005, City filed a Motion to Dismiss Smallwood's Complaint and/or in the Alternative, Motion for a More Definite Statement (**Motion to Dismiss**). In the Motion to Dismiss, City argued two grounds for dismissal: (1) lack of subject matter jurisdiction based on an alleged failure to exhaust administrative remedies, pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b)(1); and (2) failure to join Haseko as an indispensable party, citing HRCP Rule 19(a). City also argued, alternatively, for a more definite statement, pursuant to HRCP Rule 12(e).[4] Although City attached to the Motion to Dismiss a copy of a Judgment entered on November 18, 2004 in the Prior Litigation, City did not argue collateral estoppel, res judicata, collateral attack, or any other preclusive doctrine in its bid for dismissal of Smallwood's Complaint. City's only mention of that Judgment was in reference to City's argument that Smallwood should have identified Haseko and named it as a party in this case.

On January 21, 2005, Smallwood filed a Memorandum in Opposition to the Motion to Dismiss. In his opposition papers, Smallwood responded to the substance of City's jurisdictional argument, argued that joinder, not dismissal, would be appropriate if Haseko were an indispensable party, and argued that the allegations of the Complaint were sufficiently described for City to admit or deny them. Presumably because the Motion to Dismiss did not raise res judicata or any other preclusive doctrine, Smallwood did not

---

**4.** The Circuit Court did not rule on City's alternative motion for a more definite statement. Therefore, we express no opinion on whether: (a) the Complaint was so vague or ambiguous that City could not reasonably be required to frame a responsive pleading; or (b) City sufficiently pointed out the defects complained of and the details desired. *See* HRCP Rule 12(e).

address such issues in his Memorandum in Opposition. On January 11, 2005, Smallwood also filed a Motion for Expedited Hearing for Temporary Restraining Order Against Issuance of Permits and Suspension of Previously Issued Grading and Building Permits (**TRO Motion**).

On January 21, 2005, City filed a Memorandum in Opposition to the TRO Motion. The Memorandum in Opposition to the TRO Motion argued, inter alia, that Smallwood could not prevail on the merits of his claim for injunctive relief because that claim was barred by a judgment entered in favor of City and Haseko in the Prior Litigation. Citing to the First Judgment in the Prior Litigation, City argued that all of the elements of res judicata were met. City also argued that Smallwood could not prevail on the merits because: (1) Smallwood failed to avail himself of and exhaust administrative remedies and certain of his claims were premature;[5] (2) Smallwood sought to enjoin City from issuing grading or building permits to Haseko without joining Haseko; and (3) the issue of whether or not a grading or building permit should be issued was not ripe because no permitting decision had been made yet.

On January 26, 2005, City filed a Reply Memorandum in support of the Motion to Dismiss. In the Reply Memorandum, City noted (and attached) the Amended Judgment, entered on January 24, 2005, in the Prior Litigation. Again, in reference to the Motion to Dismiss, City cited the "final judgment" in the Prior Litigation only in the context of its argument that Haseko was not named in the instant litigation.

On January 27, 2005, three papers were filed by or on behalf of Smallwood, including a Notice of Limited Appearance for the Purpose of Opposing the City's Defense of Res Judicata (**Limited Appearance**).[6] The Limited Appearance argued that there was no final judgment on the merits in the Prior Litigation and submitted to the Circuit Court, inter alia: (1) excerpts from the transcript of the October 25, 2004 hearing on City's motion to dismiss filed in the Prior Litigation; and (2) the Prior Order Granting Dismissal, which stated that Smallwood's Complaint was "dismissed without prejudice."

On January 31, 2005, the Circuit Court below held a hearing on: (1) the Motion to Dismiss; and (2) the TRO Motion. At the hearing, the Circuit Court orally ruled that the doctrine of res judicata did not bar Smallwood's claims in this case.[7] However, the Circuit Court granted the Motion to Dismiss and denied the TRO Motion based on the lawsuit's "improper collateral attack" on the Amended Judgment in the Prior Litigation and, alternatively, to the extent that the suit raises environmental assessment issues, based on a failure to exhaust administrative remedies. The Circuit Court likewise denied a preliminary injunction based on the dismissal of the Complaint.

On February 23, 2005, the Circuit Court entered three Orders and a Final Judgment. The Order Granting Dismissal stated, in relevant part (emphases added):

> The Court, after considering the arguments of counsel and parties, the memoranda and exhibits submitted, and the entire record of this proceeding, hereby makes the following findings:
>
> 1) The *claims set forth in Plaintiff Craig Smallwood's Complaint herein have already been adjudicated* pursuant to the … [Amended Judgment], and the Plaintiff's *Complaint herein constitutes an impermissible collateral attack* on the aforesaid judgment; *and*
>
> 2) The Plaintiff has *failed to exhaust his administrative remedies* with respect to his claims relating to the requirements

---

5. City stated that the environmental impact statement for the drainage project referenced by Smallwood was at the draft environmental impact statement stage and, therefore, claims relating to the drainage project were premature.

6. Smallwood also filed pro se a Response to City's Memorandum in Opposition to the TRO Motion and a Motion for Preliminary Injunction for Suspension and Revocation of Permits.

7. During the hearing, the Circuit Court said, "[T]his isn't res judicata because there is no final judgment for res judicata purposes because the appeal [period] hasn't ran, if there's an appeal, I'm not sure. But, I think there's another important legal concept that applies here, and that is the rule that prohibits collateral attacks on judgments."

for Environmental Assessments or Environmental Impact Statements under Chapter 343, Hawaii Revised Statutes, and with respect to his claims relating to City and County of Honolulu permits and approvals, and therefore this Court *lacks subject matter jurisdiction over these claims.*

Based on the foregoing findings and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant City and County of Honolulu's Motion to Dismiss Plaintiff Craig Smallwood's Complaint is GRANTED and Plaintiff Craig Smallwood's Complaint ... is hereby *dismissed with prejudice* as to all claims.

After the resolution of post-judgment motions, on May 10, 2005, a Notice of Appeal was timely filed.

## II. *Standard of Review*

■ City's Motion to Dismiss was brought pursuant to HRCP Rule 12(b)(1) for lack of subject matter jurisdiction.[8] "The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Uyehara v. Uyehara,* 101 Hawai'i 370, 373, 68 P.3d 644, 647 (2003) (citations and internal quotation marks omitted).

Review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. When considering a motion to dismiss pursuant to Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.

*Id.* (citations, internal quotation marks, ellipsis, and brackets omitted).

■ The application of the doctrine of collateral attack, like the doctrines of res judicata or collateral estoppel, is a question of law. *See Lundburg v. Stinson,* 5 Haw.App. 394,

399, 695 P.2d 328, 333 (1985). Questions of law are freely reviewable de novo under the right/wrong standard of review. *Best Place, Inc. v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996).

## III. *Discussion*

The sole issue presented to this court on appeal is whether the Circuit Court erred in finding that "Plaintiff's Complaint herein constitutes an impermissible collateral attack on the aforesaid judgment" in the Prior Litigation. In order to resolve that issue, we review the collateral attack doctrine, which was not briefed or argued to the Circuit Court, but which was relied on by the Circuit Court in the Order Granting Dismissal. In this case, we must then examine the Amended Judgment before we can determine whether the Complaint herein constituted a collateral attack on the Amended Judgment in the Prior Litigation.

### A. *The Collateral Attack Doctrine*

Hawai'i courts have long recognized various preclusive doctrines that share the common goals of preventing inconsistent results, preventing a multiplicity of suits, and promoting finality and judicial economy. Notwithstanding the plethora of decisions on these doctrines, parties and courts still struggle with the analysis of whether or when decisions in one action act as a bar in another action.

■ Two of these doctrines are res judicata, frequently referred to as claim preclusion, and collateral estoppel, which is referred to as issue preclusion. Res judicata prohibits a party from relitigating a previously adjudicated claim or cause of action. **Res judicata** is applicable when: (1) the **claim or cause of action** in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; and (3) the parties to the present action are the same or in privity with the parties in the prior action. *See, e.g., Bremer v. Weeks,* 104 Hawai'i 43, 53–54, 85 P.3d 150, 160–61 (2004).

---

8. City also cited HRCP Rule 19, regarding indispensable parties. As the Circuit Court did not address that issue in the Order Granting Dismissal, we do not reach that issue on appeal.

Res judicata prohibits the relitigation of all grounds and defenses which might have been properly litigated in the prior action, even if the issues were not litigated or decided in the earlier adjudication of the subject claim or cause of action. *Id.* at 53, 85 P.3d at 160 (citations omitted).

Collateral estoppel[9] may preclude the relitigation of **a fact or issue** that was previously determined in a prior action **on a different claim or cause of action** between the same parties or their privies. Collateral estoppel only applies, however, if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment. *See Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 264, 172 P.3d 983, 1008 (2007), citing *Dorrance v. Lee*, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999). Thus the test for collateral estoppel has four elements: (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment. *Id.*

The party asserting either res judicata or collateral estoppel has the burden of establishing each of the applicable elements. *Bremer v. Weeks*, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004).

**Collateral attack,** a third preclusive doctrine, has been recognized to have some relationship to the doctrine of res judicata in that: (1) both doctrines involve the effect of an earlier judgment in a subsequent legal proceeding; and (2) both are based upon the public interest in the conclusiveness and final adjudication of controversies. *Gamino v. Greenwell*, 2 Haw.App. 59, 62–63, 625 P.2d 1055, 1058 (1981).[10]

The seminal Hawai'i Supreme Court case describing what constitutes a collateral attack held:

A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree. The word collateral, in this connection, is always used as the antithesis of direct, and it is therefore wide enough to embrace any independent proceeding. To constitute a *direct* attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose. If an appeal is taken from a judgment, or a writ of error, or if a motion is made to vacate or set it aside on account of some alleged irregularity, the attack is obviously direct, the sole object of the proceeding being to deny and disprove the apparent validity of the judgment. But if that action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral and falls within the rule. A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law. A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law.

*Kapiolani Estate, Ltd. v. Atcherly*, 14 Haw. 651, 661 (1903) (*Kapiolani Estate* ) (citations and internal quotation marks omitted), cited in *Matsuura v. E.I. du Pont de Nemours and Co.*, 102 Hawai'i 149, 158, 73 P.3d 687, 696 (2003), *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989),

9. Collateral estoppel is frequently, and perhaps confusingly, referred to as an aspect of res judicata. *See, Omerod,* 116 Hawai'i at 263–64, 172 P.3d at 1007–08; *Keahole Defense Coalition, Inc. v. Board of Land and Natural Resources,* 110 Hawai'i 419, 429, 134 P.3d 585, 595 (2006) (citations omitted).

10. The difference in the impact of two doctrines has been described as follows: "A determination of the question whether a particular judgment may be subjected to a collateral attack does not necessarily involve an inquiry into the scope and effect of the judgment as a former adjudication upon the facts or causes of action included therein." *Gamino,* 2 Haw.App. at 63, 625 P.2d at 1058. A collateral attack is an attack on the validity of a judgment in a separate proceeding involving different claims, whereas an action violating the doctrine of res judicata seeks to relitigate claims settled by a prior judgment.

and *Gamino v. Greenwell*, 2 Haw.App. 59, 63, 625 P.2d 1055, 1059 (1981).

To better understand when the collateral attack doctrine may be properly invoked in a matter, it is useful to review the particular circumstances in which our appellate courts have considered its application.[11]

In *Kapiolani Estate*, the Hawai'i Supreme Court reversed an order dismissing an action that was brought to enforce a prior decree in equity, entered in 1858 (1858 Decree). 14 Haw. at 663. The 1858 Decree ordered the guardian of three minor children to convey certain land to David Kalakaua. *Id.* at 654–56. Decades later, in 1902, the Kapiolani Estate, as the successor to all of the rights of David Kalakaua in the property, brought an action to enforce the 1858 Decree. *Id.* at 652. In that enforcement action, the respondent (Mary Atcherly) successfully argued to the lower court that the 1858 Decree was not enforceable because the three minor children were not themselves named as parties in the prior suit and therefore were not bound by the 1858 Decree. *Id.* at 662. She also argued that the prior court erred on the merits of its decision. *Id.*

The supreme court reasoned, however: "If the defects complained of can be regarded, not as matters affecting the jurisdiction but as constituting at most mere error, certainly such error cannot be taken advantage of in this case because the attack now made on the decree of 1858 is collateral and not direct." *Id.* at 660–61. After discussing what constitutes a collateral attack (as quoted above), the supreme court held that an "attack on a judgment in a proceeding to revive it is a collateral attack." *Id.* at 661. The supreme court noted that the guardian had appeared and contested the claim in the prior action. The supreme court reasoned that, under the circumstances and after a lapse of forty-four years, the courts should not examine the merits of the former proceeding or refuse to enforce the 1858 Decree. *Id.* at 662–63.

In *Gamino v. Greenwell*, 2 Haw.App. 59, 625 P.2d 1055 (1981), a family court order in a prior (divorce) action awarded one-half of the family home to each spouse and ordered the house to be sold. *Id.* at 59, 625 P.2d at 1057. After an offer to purchase the property was received, a counter-offer was signed by counsel for each party and then accepted by the buyer, Mr. Greenwell. *Id.* at 60, 625 P.2d at 1057. Thereafter, the husband (Mr. Gamino) offered to purchase the house for the same price and refused to sign the documents necessary to convey the property to Mr. Greenwell. *Id.* Mr. Gamino later signed a stipulation to allow the sale to proceed, but attempted to reserve his rights and causes of action related to the sale. The family court entered a final order approving the conveyance. *Id.* at 61, 625 P.2d at 1058.

Mr. Gamino thereafter filed an action in the circuit court against Mr. Greenwell and others, alleging that his attorney had no authority to execute the counter-offer and seeking a declaration that the sales contract and related documents were of no binding effect. *Id.* at 61, 625 P.2d at 1058. The circuit court dismissed the action based on res judicata. *Id.* at 62, 625 P.2d at 1058. On appeal to this court, Mr. Gamino argued that the issue of whether his attorney had authority to sign for him had never been litigated and therefore could not be res judicata. *Id.* Mr. Gamino also alleged that the family court and circuit court actions involved different parties

---

11. In addition to the four cases discussed herein, Hawai'i's appellate courts have considered the application of the collateral attack doctrine in numerous other cases, including *Lingle v. Hawai'i Gov't Employees Ass'n*, 107 Hawai'i 178, 186, 111 P.3d 587, 595 (2005) (collateral attack doctrine found not applicable when subsequent action was filed before the prior action became final; "there was no judgment or award to impeach"); *Kim v. Reilly*, 105 Hawai'i 93, 96, 94 P.3d 648, 651 (2004) (challenge to unappealed arbitration award which was entered as a final judgment, in an action to enforce the judgment, was an impermissible collateral attack); *In re Genesys Data Technologies, Inc.*, 95 Hawai'i 33, 40, 18 P.3d 895, 902 (2001) (where a party had chosen not to appear and had failed to challenge a default judgment in a timely manner, collateral attack was impermissible); *Matson Nav. Co. v. F.D.I.C.*, 81 Hawai'i 270, 276, 916 P.2d 680, 686 (1996) (challenge to the sufficiency of "mandatory" attachment bond in underlying contract action was not jurisdictional and, therefore, attempt to expunge writ of attachment from Transfer Certificate of Title in land court proceedings was impermissible collateral attack); *Cooper v. Smith*, 70 Haw. 449, 454, 776 P.2d 1178, 1182 (1989) (ex-husband's argument that property settlement approved in final divorce decree was unenforceable penalty or forfeiture was impermissible collateral attack on divorce decree).

and different causes of action. *Id.* This court affirmed the circuit court's action, but based on the collateral attack doctrine, rather than res judicata, and concluded that the family court properly exercised its jurisdiction over the parties and the subject matter. *Id.* at 62–64, 625 P.2d at 1058–60. We held that Mr. Gamino could have directly attacked the family court's actions, either in the family court or on appeal, but that his filing of the separate circuit court action was an impermissible collateral attack on the family court's order. *Id.* at 64, 625 P.2d at 1060.

In *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989), the plaintiffs-appellees brought an action to establish and confirm title in certain real property. Certain of the defendants-appellants, the Davis heirs, in effect requested that the court nullify as evidence of title the probate court's 1863 order of distribution and the executor's deed of distribution, based on an allegation that the distribution was not in conformance with the subject will. *Id.* at 397–98, 772 P.2d at 1191–92. The supreme court held that this assertion, mounted a century later in a quiet title action, was an indirect challenge to the order distributing land, which would be most aptly characterized as a collateral attack. *Id.* Citing, inter alia, *Kapiolani Estate,* the supreme court declined to remand the issue for trial even though the will that was the subject of the 1863 order may have been ambiguous. *Id.* Based in part on this application of the collateral attack doctrine, the supreme court affirmed the judgment of the circuit court.

In *Matsuura v. E.I. du Pont de Nemours and Co.,* 102 Hawai'i 149, 73 P.3d 687 (2003), the Hawai'i Supreme Court answered certain questions certified to it by the United States District Court for the District of Hawaii (USDC). In considering whether the litigation privilege should bar subsequent collateral proceedings for civil damages based on litigation misconduct, including fraud, the supreme court first took a comprehensive look at the policies associated with the litigation privilege, including the doctrine limiting collateral attacks upon judgments. 102 Hawai'i at 158–59, 73 P.3d at 696–97. The subject USDC action included claims of fraud, racketeering, and abuse of process, and thus had a purpose independent of overturning the prior judgment of the Hawai'i circuit court on a stipulated dismissal with prejudice based on a settlement agreement. *Id.* at 158, 73 P.3d at 696. The Hawai'i Supreme Court agreed that the USDC action was a collateral attack upon the dismissal with prejudice, citing *Kapiolani Estate. Id.* The supreme court determined, however, that the policy against collateral attacks on judgments is not absolute and does not favor limiting liability in a collateral proceeding when there is an allegation that fraud was committed in the prior proceeding. *Id.* at 159, 73 P.3d 687, 73 P.3d at 697.

The collateral attack doctrine was recently applied by the Hawai'i Supreme Court in *In re Estate of Kam,* 110 Hawai'i 8, 129 P.3d 511 (2006) (*Kam*). One of the issues in *Kam* was a collateral attack on two 1997 family court orders in a later probate court proceeding. The question presented was whether the family court had subject matter jurisdiction to enter the 1997 orders. *Id.* at 10, 129 P.3d at 513. Concluding that it did not, the supreme court held that the 1997 orders were void ab initio. *Id.* at 22, 129 P.3d at 525. In discussing the distinction between appellate review of a judgment being collaterally attacked versus direct appellate review of a judgment, the supreme court noted that the only issue from the prior proceeding that was reviewable on appeal in the collateral proceeding was whether the family court had jurisdiction to enter the orders in the prior proceeding. *Id.* at 23, 129 P.3d at 526. Thus, the appellate court in *Kam* was faced with only two possible issues: (1) whether the family court had jurisdiction to enter the orders in the prior proceeding (*i.e.,* a permissible collateral attack issue); and (2) if the family court had jurisdiction, whether and to what extent the probate court had properly applied the doctrines of collateral estoppel and res judicata in giving preclusive effect to the family court orders. *Id.* Having answered the question regarding the prior court's jurisdiction in the negative, the appellate court had no need or authority to consider the second question or any other issue pertaining to the prior proceeding. In other words, the potential preclusive effect or relevance of prior orders are not properly considered if the orders were issued by a court lacking subject matter jurisdiction. *Id.*

In each of these cases, whether permissibly or improperly, a party in the subsequent action was seeking relief from or in contravention of a clear directive in a final order, decree or judgment in the prior action. In each of these cases, the party or the party's privy, had failed to seek relief from the prior judgment by timely appeal or other direct attack. These cases are distinguishable from cases in which the res judicata doctrine has been applied predominantly because of the failure of commonality of the specific claims or causes of actions presented in the suits. These circumstances were described in *Kapiolani Estate* as proceedings with an independent purpose, contemplating some other relief or result, which may depend on the overturning or successful attack on the prior judgment. 14 Haw. at 661.

■ To eliminate or at least reduce any confusion that may exist, we summarize the collateral attack doctrine as follows. The party asserting that an action constitutes an impermissible collateral attack on a judgment must establish that: (1) a party in the present action seeks to avoid, defeat, evade, or deny the force and effect of the prior final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal; (2) the present action has an independent purpose and contemplates some other relief or result than the prior adjudication; (3) there was a final judgment on the merits in the prior adjudication; and (4) the party against whom the collateral attack doctrine is raised was a party or is in privity with a party in the prior action. Collateral attacks may be allowed under limited circumstances, such as when there is an allegation that the prior court lacked subject matter jurisdiction or that fraud was committed in the prior proceeding.

■ The first part of this test confirms that the collateral attack doctrine is implicated when an independent suit seeks to impeach a judgment entered in a prior suit. The second part distinguishes the collateral attack doctrine, where a party is suing on a different claim for relief, from the doctrine of res judicata where a party is seeking a different result on the same claim or cause or action. Although only stated by implication in the foregoing Hawai'i cases applying the collateral attack doctrine, we conclude that the third prong, finality, is a necessary component of this defense. *See Lingle v. Hawai'i Gov't Employees Ass'n*, 107 Hawai'i 178, 111 P.3d 587 (2005) (collateral attack doctrine found not applicable when subsequent action was filed before the prior action became final). Collateral attack is not to be used as a substitute for collateral estoppel or res judicata, where such doctrines are not yet "ripe" for application because the prior action remains pending. In such instances, consolidation of the matters or a stay of the subsequent litigation would be among potential alternatives. The final part recognizes that, under appropriate circumstances, persons who were not parties to the prior adjudication may raise the collateral attack doctrine against a party who is properly bound by the prior judgment.

■ The following chart summarizes and compares the doctrines of res judicata, collateral estoppel, and collateral attack.

| RES JUDICATA | COLLATERAL ESTOPPEL | COLLATERAL ATTACK |
|---|---|---|
| • there was a **final judgment** on the merits in the prior adjudication | • there was a **final judgment** on the merits in the prior adjudication | • there was a **final judgment** on the merits in the prior adjudication |
| • the **parties** in the present action are the **same or in privity** with the parties in the prior adjudication | • the **parties** in the present action are the **same or in privity** with the parties in the prior adjudication [12] | • the **party against whom the collateral attack doctrine is raised** (*i.e.,* the party who is collaterally attacking the prior judgment, order or decree) **was a party or is in privity** with a party in the prior adjudication |
| • the **claim or cause of action** in the present action is identical to the one decided in the prior adjudication | • a **fact or issue** in the present action is identical to the one decided in the prior adjudication and | • a party in the present action seeks to **avoid, defeat, evade, or deny the force and effect of the prior final** |

12. "Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue." *Dorrance v. Lee*, 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999).

| | judgment, order, or decree **in some manner** other than a direct **post-judgment motion, writ, or appeal** and |
|---|---|
| • the **fact or issue** decided in the prior action was actually litigated, finally decided, and **essential** to the earlier valid and final judgment | • the present action has an **independent purpose** and contemplates some **other relief or result** than the prior adjudication |

## B. *The Amended Judgment*

The Circuit Court ruled that the Complaint in this case was an impermissible collateral attack on the Amended Judgment in the Prior Litigation.[13] In order to review that issue, we must consider what factual and/or legal issues were determined in the Amended Judgment.[14]

▆▆ In Hawai'i, a bright-line rule requires that a "separate judgment" be entered in cases subject to HRCP Rule 58 in order to render a circuit court's decision final and appealable. *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994). The sole purpose of the separate judgment rule is, however, to determine when the time for appeal commences. *Jenkins,* 76 Hawai'i at 118, 869 P.2d at 1337. It was not intended to modify the scope or impact of the matters being finalized. A judgment on a dismissal without prejudice can be a final judgment for the purpose of appealability. *Aiona v. Wing Sing Wo Company,* 45 Haw. 427, 429–30, 368 P.2d 879, 881 (1962). In that instance, "it has been conclusively decided that nothing has been adjudicated as to the sufficiency of the evidence adduced." *Id.* at 429, 368 P.2d at 881.

▆▆ Citing HRCP Rules 54 and 58, the Amended Judgment (in the Prior Litigation) referenced both the Prior Order Denying Injunctive Relief and the Prior Order Granting Dismissal. The Amended Judgment then, in numbered paragraphs 1–10, entered judgment for Haseko and City and against Smallwood on each of the claims or causes of actions that were enumerated and identified in the Prior Order Granting Dismissal as being dismissed without prejudice. Each of these numbered paragraphs referred to the claim identified therein as a claim for relief in Smallwood's August 9, 2004 Complaint.

In addition to referencing the claim as being a claim for relief in the Complaint, the first numbered paragraph (1) in the Amended Judgment also referred to Smallwood's claim for injunctive relief in the context of: "Plaintiff's Ex Parte Motion for Temporary Restraining Order Against Issuance of Permits (and for Preliminary Injunction), filed September 14, 2004, as to Plaintiff's claim for injunctive relief to restrain issuance of permits to Haseko (Ewa) Inc., remove the wall on Haseko (Ewa) Inc.'s, Ewa property and otherwise terminate construction by Haseko (Ewa) Inc. at the subject location." While paragraph (1) could have been clearer, we read the Amended Judgment to enter judgment on the September 14, 2004 *Prior Order Denying Injunctive Relief,* which included the ruling on Prior Injunctive Relief Motion (which motion was filed *on May 26, 2004*), as well as the claim for injunctive relief in the Complaint that was filed later in the Prior Litigation.

The last numbered paragraph (11), also included the "magic words" indicating the court's intention to dismiss any unenumerated claims, "All other claims and parties are dismissed." *See Jenkins,* 76 Hawai'i at 120 n. 4, 869 P.2d at 1339 n. 4 ("If the circuit court intends that claims other than those listed in the judgment language should be dismissed, it must say so; for example ... 'all other claims, counterclaims, and crossclaims are dismissed' ").

Except as discussed below, in accordance with the Hawai'i Supreme Court's decisions in *Jenkins* and *Aiona,* we conclude that the Amended Judgment in the Prior Litigation merely entered "final judgment" on the Prior

---

13. There is no allegation that the court lacked subject matter jurisdiction in the Prior Litigation or that fraud was committed in procuring the Amended Judgment. Therefore, there would be no permissible grounds for a collateral attack in this case, if the collateral attack doctrine were applicable.

14. We do not review the merits of the Amended Judgment's adjudication of the facts, issues or causes of actions included therein. *See* n. 10 above.

Order Granting Dismissal *without prejudice,* thereby confirming that "it has been conclusively decided that nothing has been adjudicated as to the sufficiency of the evidence adduced" as to Smallwood's claims for relief in the Prior Litigation. *See Aiona,* 45 Haw. at 429, 368 P.2d at 881.

As to the claims for relief referenced in paragraph (1), the Amended Judgment is ambiguous. Smallwood's claim for injunctive relief in the August 9, 2004 Complaint was dismissed *without prejudice* in the November 9, 2004 Order Granting Dismissal. Nevertheless, the record of the proceedings in the Prior Litigation indicates that the circuit court therein held three days of hearings, the parties presented testimony, evidence, memoranda, and arguments in support of and against the relief requested in the Prior Injunctive Relief Motion. The circuit court in the Prior Litigation then entered Findings of Fact, Conclusions of Law, and specific orders in the Prior Order Denying Injunctive Relief, including that:

> After consolidating the hearing with a trial on the merits, pursuant to Haw. R. Civ. P. 65(a)(2), any and all portions [sic] and claims contained in Plaintiff's Complaint filed on August 9, 2004 requesting a temporary restraining order, injunctive relief, or an order to demolish the Retaining Wall are hereby DENIED and DISMISSED.

Notwithstanding the ambiguity in the wording of paragraph (1) of the Amended Judgment, for the following reasons, we conclude that Smallwood's claim for injunctive relief regarding the Retaining Wall bordering the Ocean Pointe Development along Papipi Road in Ewa Beach (**Papipi Road Retaining Wall**) was actually adjudicated on the merits and dismissed, with prejudice, in the Prior Order Denying Injunctive Relief. To conclude otherwise, we would have to ignore entirely the reference in the Amended Judgment to the Prior Order Denying Injunctive Relief, as well as the language of the Prior Order Denying Injunctive Relief, and the conduct of evidentiary hearings that took place prior to the entry of that order. At the October 25, 2004 hearing in the Prior Litigation, the court specifically indicated that the dismissal without prejudice of the Complaint was not intended to nullify the court's prior rulings on the Prior Order Denying Injunctive Relief.

In addition, HRCP Rule 65(a)(2), cited in the Prior Order Denying Injunctive Relief, provides:

> (2) Consolidation of Hearing with Trial on Merits. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

The circuit court's reference to HRCP Rule 65(a)(2) confirms that the evidentiary hearings on Smallwood's Prior Injunctive Relief Motion were intended to be construed as the adjudication on the merits of the relief sought in the Prior Injunctive Relief Motion.

Finally, we have previously held that a "subsequent dismissal of the host lawsuit cannot work, without more, a reverse adjudication." *Standard Management, Inc. v. Kekona,* 99 Hawai'i 125, 137, 53 P.3d 264, 276 (App.2001). We hold that principle applicable to these circumstances. The subsequent dismissal without prejudice of Smallwood's Complaint in the Prior Litigation does not wipe out the adjudication on the merits of the claim for injunctive relief therein, as set forth in the Prior Order Denying Injunctive Relief.

In sum, we conclude that the Amended Judgment in the Prior Litigation entered final judgment on: (1) the dismissal with prejudice of Smallwood's claim for injunctive relief regarding the Papipi Road Retaining Wall; and (2) the dismissal without prejudice of all other claims for relief in the Complaint filed in the Prior Litigation.

### C. *Application of the Collateral Attack Doctrine*

In the Order Granting Dismissal, the Circuit Court ruled that the Complaint herein

was an impermissible collateral attack on the Amended Judgment because *the claims* set forth in the Complaint were previously adjudicated pursuant to the Amended Judgment. We respectfully disagree.

First of all, there was no impermissible collateral attack on the Amended Judgment with respect to the disposition of the claims that were dismissed without prejudice in the Prior Litigation because there was no adjudication on the merits of those claims. When claims are dismissed without prejudice, a party is free to raise those claims in subsequent litigation. *Land v. Highway Construction Company, Ltd.*, 64 Haw. 545, 551, 645 P.2d 295, 299 (1982). The collateral attack doctrine, like the doctrines of res judicata and collateral estoppel, is only intended to foreclose adjudicated matters.

We also conclude that the collateral attack doctrine is inapplicable to the claims for injunctive relief that were finalized in the Amended Judgment. The first element of the collateral attack doctrine is not satisfied. This case is unlike: (1) the *Kapiolani Estate* case wherein a party was arguing that a prior decree should not be enforced; (2) the *Gamino v. Greenwell* case wherein the plaintiff was seeking to invalidate a sale that was approved in the prior litigation; (3) the *Matsuura* case wherein the plaintiff was indirectly attacking the judgment in the first case based on alleged fraud in the conduct of the prior litigation; or (4) the *Kam* case, wherein a party was alleging that the prior orders were void because the prior court lacked subject matter jurisdiction. The Complaint herein does not seek to indirectly avoid, defeat, evade, or deny the force and effect of the entry of judgment on the dismissal with prejudice of Smallwood's claim for injunctive relief regarding the Papipi Road Retaining Wall. Rather, the Complaint herein seeks relief related to an alleged plan for stormwater runoff from Kaloi Gulch going to the beach and ocean at Onelua Beach Park near Smallwood's home, allegedly without a proper environmental assessment. Smallwood's claims herein do not seek to set aside, invalidate, or impeach the Amended Judgment through an independent action seeking an alternative form of relief. Indeed, except for any potential res judicata or collateral estoppel effect, the Amended Judgment is not an impediment to Smallwood's claims in this case. *See Kam*, 110 Hawai'i at 23, 129 P.3d at 526.

This conclusion is not intended to preclude the defenses of res judicata or collateral estoppel in this case. If Smallwood seeks injunctive relief herein as to the Papipi Road Retaining Wall, he is barred by res judicata from relitigating such claims. To the extent that Smallwood seeks to relitigate facts or issues that were adjudicated in conjunction with the evidentiary hearings on his prior request for injunctive relief as to the Papipi Road Retaining Wall, under the doctrine of collateral estoppel, he is bound by the prior court's findings and conclusions regarding such facts or issues, if their determination was essential to the final adjudication in the Prior Litigation. *See Omerod*, 116 Hawai'i at 264, 172 P.3d at 1008.

In this case, it was error for the Circuit Court to substitute the doctrine of collateral attack for the doctrine of res judicata because of the Court's concern that the Amended Judgment in the Prior Litigation was not yet "final." *See* n. 7 above. The distinction between the doctrines of res judicata and collateral attack is not merely a question of timing. In considering the application of the collateral attack doctrine, the trial court must first determine whether a party is expressly or in effect attacking the validity of a prior judgment, while pursuing some other purpose or relief. If the answer to this question is no, then the only question left for the court is whether and to what extent the doctrines of collateral estoppel (issue preclusion) or res judicata (claim preclusion) apply.[15] *See Kam*, 110 Hawai'i at 23, 129 P.3d at 526. If the answer is yes, then the court must determine: (1) whether the other elements of the collateral attack doctrine are satisfied (then there is a collateral attack); and (2) whether

15. Indeed, the better practice may be to first determine whether res judicata or collateral estoppel apply in a particular case. Collateral attack is (potentially) applicable only when an indirect attack on a prior judgment, order or decree is evident, but the cases lack an element of commonality that is necessary to satisfy the requirements of res judicata or collateral estoppel.

154

the attack is based on a lack of subject matter jurisdiction or because the judgment was procured by fraud (in which event, the collateral attack may be permissible under Hawai'i law).

Finally, we address the Circuit Court's dismissal of this case *with prejudice*. Smallwood did not appeal, therefore we do not review the Circuit Court's ruling that he "failed to exhaust his administrative remedies with respect to his claims relating to the requirement for Environmental Assessments or Environmental Impact Statements under Chapter 343, Hawaii Revised Statutes, and with respect to his claims relating to City and County of Honolulu permits and approvals, and therefore [the Circuit Court lacked] subject matter jurisdiction over these claims." It is unclear to us what claims were dismissed by this ruling. In any case, a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits. *Uyehara v. Uyehara*, 101 Hawai'i 370, 376, 68 P.3d 644, 650 (App.2003). Hence, we conclude that the Circuit Court's dismissal with prejudice was based on the erroneous application of the collateral attack doctrine and, therefore, it was error for the Circuit Court to dismiss Smallwood's Complaint with prejudice.

We vacate the Order Granting Dismissal and the Judgment entered thereon. We remand this case for further proceedings not inconsistent with this opinion.

